# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00362-CR

**Calvin Earl Feagins, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 3-01-2935, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## O P I N I O N

Appellant Calvin Earl Feagins was convicted by a jury of aggravated assault on a public servant, a felony of the first-degree, and sentenced to thirty-eight years in prison. *See* Tex. Pen. Code Ann. § 22.02(b)(1) (West 2001). He appeals this conviction, contending that (1) he was denied his constitutional right to a cross-section of the community in his jury venire as a result of the district clerk's practice of allowing potential jurors to respond over the internet; (2) the State's reliance on eyewitness testimony in opposition to his expert testimony makes the evidence factually and legally insufficient to support a conviction; and (3) the trial court erred in failing to include a charge of evading arrest or detention and in failing to instruct the jury to consider lack of probable cause for initially detaining Feagins. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 27, 2001, Uzil Gamez, a loss prevention officer at Highland Mall, observed a car honk at a pedestrian in the mall parking lot, at which point the driver exited the car holding a cell phone box and talked with the pedestrian. The two then entered the vehicle. Believing this activity to be suspicious, Gamez contacted mall security.

Jerry Cox, assistant director of security at the mall, and Detective Albert Berton, an off-duty, uniformed police officer working at the mall, went to the lot to investigate. Berton was unsure of the location of the vehicle and so was being guided by mall security over the radio. When alerted he had reached the vehicle in question, he was directly in front of it. Upon seeing the driver reach down to his right, Berton ordered both of the men to show their hands. When one of them proceeded to reach into his shirt, Berton pointed his gun at the man and again ordered him to show his hands.

Cox then walked to the rear of the car to view the license plate, at which point the car began to back up. Berton walked with the car as it reversed, with his gun still drawn but pointed to the ground, and ordered the driver, Feagins, to stop. After the car finished backing out, it accelerated towards Berton. He fired his weapon at the car while running to the left to get out of the way of the vehicle, which sped out of the parking lot.

Feagins was later arrested and charged with aggravated assault on a peace officer. *See* Tex. Pen. Code Ann. § 22.02(a)(2). The indictment included three penalty paragraphs, which listed three prior felony convictions. At trial, a jury found him guilty of aggravated assault on a

2

peace officer and assessed punishment of thirty-eight years in prison. The trial court rendered judgment in accordance with the verdict.

## DISCUSSION

**Jury Selection**

In his first point of error, Feagins asserts that he was denied his constitutional right to a cross-section of the community in his jury venire because of the district clerk's practice of allowing potential jurors to initially respond by internet. As a result of the disparity in internet access and use between African-Americans and other groups, he argues, this practice systematically excludes African-Americans from the jury selection process.

In creating a jury venire, the district clerk sends out summonses to potential jurors around the county. The potential jurors are allowed to respond to initial questions regarding topics such as their availability and employment either in person at the court or over the internet. Once all responses have been received, potential jurors are assigned to individual courts. The district clerk keeps track of how many respond in person, how many respond over the internet, and of which potential jurors chose each method. Potential jurors are assigned to a court in the same proportion of internet to in-person responders as was found in the overall response rate for the county during the process.

The Supreme Court has crafted a test to determine whether or not a prima facie violation of the cross-section requirement has been established. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). The defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are

3

selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury process. *Id*. This test applies equally to cases involving federal and Texas juries. *See Pondexter v. State*, 942 S.W.2d 577, 580 (Tex. Crim. App. 1996).

The trial court, both parties, and this Court agree that the first two prongs of the *Duren* test were met by Feagins in this case. African-Americans are a distinctive group, and the fact that zero out of fifty-two members of his panel were African-American is unreasonable. *Id*. The contested issue is whether this was a result of systematic exclusion from the jury process. Exclusion is considered systematic if it is inherent in the jury-selection process. *Duren*, 439 U.S. at 366.

Feagins notes that, although 9.2% of Travis County residents are African-American, not one of the fifty-two members of the jury array in his trial were. He attributes this to the disparity between levels of internet usage in African-Americans as opposed to other groups. Evidence shows that, nationwide, 60% of whites, Asian-Americans, and Pacific Islanders use the internet, while the rate for African-Americans is 39.8%. In testimony at trial, a representative from the district clerk's office stated that 78% of Feagins's venire responded by internet, and that none of those were African-American. She further explained that, because of the desire to counteract the effect of the internet-usage disparity, each court's venire is formed in the same proportion of internet to in-person responses. Because normally about 85% of potential jurors county-wide respond by internet, most venire panels are composed of 85% internet responders.

Feagins argues that the district clerk's procedure of allowing both internet and in-person responses, together with the practice of separating these groups into two distinct "universes"

4

that are kept at their respective response percentages in the venire, increases the likelihood that African-Americans will be under-represented in the jury pool. Since this procedure is always used, Feagins argues that it meets the criteria for systematic exclusion.

The State counters by arguing that the clerk's jury impanelment methods in fact help to ensure that distinct groups are not underrepresented in juries. Although in Feagins's case there obviously was a great disparity, as evidenced by the fact that none of the fifty-two members of the jury array for his trial were African-American, the State cites the Texas Court of Criminal Appeals' holding that a disproportionate representation of a minority in a single jury panel does not alone demonstrate systematic exclusion. *Pondexter*, 942 S.W.2d at 581. It also points to evidence given at trial that both before and after internet responses were allowed, the average Travis County jury was made up of 6% African-Americans. Even if Feagins can show that the jury response system in Travis County regularly leads to panels where minorities are underrepresented, the State argues, Feagins has not met his burden in proving, as he must under Texas law, that the clerk "has *willfully* summoned jurors with a view to securing a conviction or an acquittal." Tex. Code Crim. Proc. Ann. art. 35.07 (West 2001) (emphasis added).

Feagins believes that the "willful" requirement in article 35.07 of the code of criminal procedure is unconstitutional because there is nothing in the Supreme Court's *Duren* test requiring any showing of willfulness. Because the Sixth Amendment's cross-section requirement is applied to the states through the Fourteenth Amendment, a state can not change the definition of the requirement, thereby lessening a defendant's right, according to Feagins.

There are two facets of Travis County's impanelment process that Feagins believes lead to systematic exclusion of African-Americans: the ability of prospective jurors to make their initial response via the internet, and the fact that those who respond via the internet are kept at the same ratio in each jury pool as they were in the overall selection process. In each of these aspects we believe that Feagins's arguments are mistaken

In our opinion, the fact that some prospective jurors make their initial responses regarding personal information and availability over the internet has no effect on the final population of venires. Every person who receives a notice that he or she has been selected for jury duty is required to respond either by internet or in person. If the internet was not allowed as a response method, exactly the same people would be required to respond as are today. Feagins has produced no evidence showing that the clerk's present method does not as a whole target a fair cross-section of the community.

The use of two jury "universes" to keep the ratio of internet to in-person responses the same in venires as it is in the overall response population also does not amount to systematic exclusion. In fact, this method works to ensure that such exclusion does not take place. By keeping in-person and internet responders separate, the smaller group is not in danger of getting overwhelmed by the larger, and the larger is not in danger of becoming diluted by the smaller.

In illustrating his point, Feagins hypothesizes that someday 99% of responses may be made by internet and only 1% will be in person. He argues that this extreme example illustrates the problem, since if only 1% of responses are made in person and under 40% of African-Americans

6

regularly use the internet compared to 60% of whites, there will be an extreme under-representation of African-Americans on juries.[1]

This hypothetical situation actually demonstrates why the district clerk's two-universe method helps ensure that a fair cross-section of the community is represented. If someday only 1% of the population responds in person, and this group is made up of different minority proportions than the internet-response group, ensuring that 1% of the venire for each trial remains in-person responders allows the clerk to be sure that groups who are not as prone to use the internet are still proportionally represented. Feagins seems to assume that if only 1% of the potential jurors respond in person the figure of 39.8% internet usage by African-Americans will still be true, meaning that African-Americans will make up a smaller segment of the jury pools than they reasonably should. This reasoning is faulty. If today 6% of jurors are African-American, and we assume that only 39.8% of them respond by internet (see footnote one), then 2.4% of the overall juror population is made up of African-Americans who respond by internet. Any change in the overall internet-to-in-person ratios will reflect changes in overall internet usage in Travis County, not changes in the percentage of any single racial or ethnic group's presence in venires.

The fact that 6% of Travis County jurors are African-American while 8% of the county population is African-American also cannot lead us to the conclusion that any group has been

---

[1] Although Feagins cites figures stating that 39.8% of African-Americans use the internet while 60% of whites, Asian-Americans, and Pacific Islanders do, these numbers come out of a nationwide study and therefore give us no real evidence as to the state of the divide between African-Americans in Travis County. Because the method used by the district clerk works to counteract any divide that may be present, the actual internet-usage figures in the county are not necessary for our analysis.

systematically excluded from the jury process since Feagins offered no evidence of what percent of *eligible jurors* in the county are African-American. Many factors play into determining who qualifies for the selection process, including relative percentages of registered voters, licensed drivers, and adult population. With no evidence representing what these figures are in Travis County or directly showing what percentage of African-Americans are eligible to serve on a jury, we are unable to conclude that 6% is not a proper number. *Pondexter*, 942 S.W.2d at 580-81.

Although even without the element of willfulness, we see no reason to believe that the district clerk's jury impanelment procedures represent systematic exclusion under the *Duren* test. We also dispute Feagins's assertion that the code of criminal procedure's willfulness requirement runs counter to the United States Constitution. A complaint regarding the Equal Protection Clause of the Fourteenth Amendment requires a showing of intentional or systematic discrimination. *Castaneda v. Partida*, 430 U.S. 482, 292-94 (1977)*; Pondexter*, 942 S.W.2d at 581. In *Pondexter*, the court of criminal appeals, citing *Castaneda*, overruled the defendant's points of error regarding the fair cross-section requirement because he failed to demonstrate that any underrepresentation of African-Americans in the venire was caused by the intentional or systematic acts of the State. *Pondexter*, 942 S.W.2d at 581.

We hold that any underrepresentation of African-Americans on Feagins's jury was not a result of systematic exclusion of African-Americans from the jury process. The district clerk's practice of allowing initial responses from prospective jurors via the internet and ensuring that the ratio of internet responders to in-person responders is consistent across all venires does not result

8

in systematic exclusion, nor is there any evidence it is intended to do so. We therefore overrule Feagins's first point of error.

**Sufficiency of the Evidence**

Feagins's second point of error asserts that the State's evidence was factually and legally insufficient to support a conviction because the State did not bring forward any expert testimony to rebut the testimony of Feagins's expert that the officer's version of events was physically impossible.

*Standard of Review*

In determining the factual sufficiency of the evidence, we review all the evidence in a neutral light and ask if the proof of guilt is so weak or the contrary evidence so strong as to preclude a rational finding of guilt beyond a reasonable doubt. *Zuniga v. State*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). Evidence supporting guilt can outweigh the contrary proof and still be factually insufficient. *Id.* A court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Thus, courts look at all the evidence on both sides and make a predominantly intuitive judgment. *Id.* The court reviews the fact finder's weighing of the evidence and may disagree with the fact finder's determination. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). The review also must show appropriate deference to the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given

9

to witness testimony. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Absolute deference is not the standard. *Johnson*, 23 S.W.3d at 8. The degree of deference must be in proportion with the facts that the court can accurately glean from the record. *Id*. The review is conducted mindful of the facts that criminal defendants are not under any obligation to present evidence on their behalf and the State must prove its case beyond a reasonable doubt. *Id*. at 11.

To review the legal sufficiency of the evidence, we look at the relevant evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson*, 23 S.W.3d at 7. The jury, as the trier of fact, is entitled to resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight to be given to any particular evidence. *See Jones*, 944 S.W.2d at 647. Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

*Arguments and Analysis*

Feagins asserts that Berton was incorrect when he stated that he was in front of Feagins's vehicle when it began to speed away, and therefore Berton was never threatened with bodily injury. If this is true, Feagins could not have committed an assaultive offense because a threat of imminent bodily injury is an essential element of the prosecution's claim. Tex. Pen. Code Ann. § 22.01(a)(2) (West 2001).

Defense expert David Lysek testified that Berton's version of events was physically and mathematically impossible given the location of the officer in relation to the vehicle and the

10

speed that the vehicle was traveling. To gather data for his calculations, Lysek utilized a video in which Berton reenacted the crime.

Feagins argues that because the State did not call any rebuttal witnesses to dispute Lysek's mathematical calculations, the State's evidence was factually insufficient to sustain a guilty verdict. The jury, he argues, should not have ignored these uncontested mathematical calculations.

Feagins further asserts that the evidence may be legally insufficient as well because there was no scientific evidence disproving Lysek's calculations that the incident could not have occurred as Berton recounted. He agrees that the evidence shown in the light most favorable to the verdict would lead to believing Berton's version of events, but states that because that version has been "proven wrong" it can not support the verdict.

Although Feagins is correct that no State expert witness was called to disprove Lysek's calculations, the basic premise behind the calculations was refuted by the State during cross-examination, and the conclusion drawn from the calculations was contradicted by the testimony of other witnesses.

According to his own testimony, all of Lysek's calculations are based on Berton being five feet from the car at the time acceleration started. There is no evidence on record that states that Berton was in fact five feet from the car at this point. The five-feet figure was used because, in the video reenactment, Berton gestured towards the approximate location of both himself and the vehicle at the time of the incident and Lysek estimated that the gestures showed a distance of about five feet between Berton and the vehicle. Nowhere on the video reenactment does Berton say that he was five feet from the vehicle, nor does he nor anyone else give any figure as to the distance.

11

The State also elicited testimony from Lysek that in his experience as an accident reconstructionist he has interviewed people in the past who were about to be run over and were unable to accurately say how far they were from the vehicle. He further testified on cross-examination that his calculations were exact in disproving Berton's version of events only if the car was exactly five feet away from the officer.

Furthermore, two State witnesses described the event in ways that supported Berton's version. Jerry Cox, a mall security officer, diagramed the scene by putting Berton directly in front of Feagins's vehicle and stated that the car went straight without taking evasive action to get around Berton. Martin Alexander Lehman, an eyewitness who was outside the mall when the incident occurred, testified that he viewed Berton moving out of the way when the tires began to squeal.

The jury is the sole judge of the credibility of a witness. *Landrum v. State*, 977 S.W.2d 586, 588 (Tex. Crim. App. 1998). To determine the credibility to be given to different testimony, the jury must reconcile conflicts in the evidence. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). In doing so, jurors are free to believe or disbelieve any witness, including those giving scientific expert testimony. *Landrum*, 977 S.W.2d at 588.

Although the State may not have produced its own expert witness to rebut Lysek's testimony, it did rebut the expert analysis on cross-examination. Lysek's testimony was refuted by pointing out problems with the underlying basis for his conclusions: that Berton was five feet away from the car when it began to move. Even if the jury believed Lysek's testimony that from five feet away it would have been impossible for Berton to get out of the way of a vehicle starting from a stop, there is sufficient question surrounding the actual distance to support doubt in the validity of the conclusions drawn from the calculations.

12

We hold that the evidence was both legally and factually sufficient. A reasonable jury could have disbelieved Lysek's calculations or believed their weight to be minimal, allowing for a rational finding of guilt beyond a reasonable doubt. We therefore overrule Feagins's second point of error.

**Failure to Include Charge of Evading Arrest and Instructions Relating to Cause for the Stop**

In his third point of error, Feagins maintains that the trial court erred in failing to include a charge of evading arrest and in failing to instruct the jury to consider the possible lack of probable cause for initially detaining Feagins. *See* Tex. Pen. Code Ann. § 38.04(a) (West 2003).

Feagins contends that because the evidence shows that the offense of evading arrest or detention was possibly committed, it should have been included as an option for the jury to consider. If the jury disbelieved Berton's testimony that the car almost hit him, Feagins states, evading arrest is a crime that would fit the evidence. Because the court did not include this option for the jury to consider, Feagins believes that the jury was unable to perform its duty to decide whether the facts would support a conviction for evading arrest. He further argues that the trial court should have included a paragraph in the jury instructions asking them to determine whether or not it was reasonable for Berton to detain Feagins based on the information the officer had at the time. Because the court did not include such a paragraph, Feagins says, the jury might have believed that this fact was irrelevant to the case or that the trial court was commenting on the weight of the evidence.

A lesser-included offense is required to be charged if that offense is a valid, rational alternative to the charged offense, *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997),

13

but in order for a charge to meet that standard it must pass a two-prong test, *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999). First, proof of the lesser-included offense must be included in the proof necessary to establish the charged offense. *Id.* Second, there must be some evidence on record that would permit a jury to rationally find that if the defendant is guilty, he is only guilty of the lesser offense. *Id.*

The State argues that evading arrest is not a lesser-included offense of aggravated assault on a police officer because in order to prove the charge of evading arrest the State would have to prove that Feagins intentionally fled from a person he knew to be a police officer attempting to lawfully arrest or detain him. *See* Tex. Pen. Code Ann. § 38.04(a) (West 2001).

We agree with the State. A lesser offense is required to be charged when the evidence raising that lesser offense also casts doubt on the more serious offense. *Arevalo*, 943 S.W.2d at 889. It is included to give the jury a choice between offenses that may have been committed based on the same evidence. *Id.* That is not the case here. In order to prove a charge of evading arrest the State would have to prove beyond a reasonable doubt that Feagins was attempting to flee lawful arrest or detention by a person he knew to be a police officer. Proof of this element is not required to prove the charged offense of assault on a public servant. *Compare* Tex. Pen. Code Ann. § 22.02 *with id.* § 38.04. Because Feagins's argument fails the first prong of the test, the lesser charge was not necessary. Had the State chosen to charge Feagins with evading arrest and been successful, a jury could have found him guilty of both crimes separately.

Because the State was not required to prove the elements of evading arrest, there was no need for a jury instruction regarding the reasonableness of Berton's detention of Feagins. The elements of assault on a police officer have no relation to whether or not an arrest or detention was

14

occurring at the same time was legal. *See* Tex. Pen. Code Ann. § 22.02(a)(2); *cf. Sanchez v. State*, 769 S.W.2d 348, 350 (Tex. App.—San Antonio 1989, no pet.). There was no reason for the court to include such an instruction to the jury as the question of probable cause was, in fact, irrelevant. We therefore overrule Feagins's third point of error.

## CONCLUSION

We conclude that Feagins was not denied his constitutional rights as a result of the district clerk's practice of allowing potential jurors to make their initial response by internet or by separating the different response groups into two universes and keeping their respective percentages consistent in each court assignment. We further conclude that the evidence was legally and factually sufficient to sustain a conviction against Feagins of aggravated assault on a police officer, and that the trial court did not err in denying Feagins's request to include a charge of evading arrest and an instruction on probable cause to the jury. Accordingly, we affirm the judgement of conviction by the trial court.

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 29, 2004

Publish

15