Affirmed and Memorandum Opinion filed September 5, 2006








Affirmed and Memorandum Opinion filed September 5, 2006.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00192-CR

NO. 14-05-00193-CR

____________

 

LAWRENCE MCQUEEN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 956,898
& 956,899

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Lawrence McQueen, was indicted for two counts of
aggravated sexual assault of a child.  He pleaded not guilty to both charges
and elected to represent himself at the guilt-innocence phase of the trial,
though requested counsel for the punishment phase of the trial.  A jury
convicted him on both counts, and the trial court sentenced him to life
imprisonment.  In one issue, appellant argues the evidence was factually
insufficient to sustain his conviction.  We affirm.

 








Factual and Procedural Background

On February 24, 2001, appellant and Bennie Ross,
complainant=s mother, were involved in a heated argument. 
Complainant, L.M.[1],
was so upset about this argumentCone of many
between her parents[2]Cthat she went next
door to a family member=s home.  Once at the other home, L.M.
telephoned her father and told him Ahe [had] broken
his promises to her and that she was going to break her promise to him.@  Testimony
fleshed out that L.M. had promised not to tell of his sexual assaults against
her in exchange for his better treatment of her mother.

After this phone call, L.M. confided in her cousin, Monica
Revis, about how appellant had sexually assaulted her.  According to L.M.,
appellant engaged in sexual intercourse with her over a period of years,
beginning when she was ten or eleven years old.[3] 
After L.M. informed her cousin of the abuse, other family members were
notified, and eventually the State became involved.

The Children=s Assessment
Center (ACAC@) interviewed complainant
regarding the abuse.  Complainant also received a thorough medical examination,
which was inconclusive as to whether or not complainant had been abused, or
even had sexual intercourse.  However, a physician who specializes in child
sexual abuse, testified that it is normal for female genitalia of a girl L.M.=s age[4]
to heal quickly and perfectly with no permanent signs of physical trauma. 
Indeed, the State=s medical expert testified that girls can
be found with seminal fluid in their genitalia, or infected with a sexually
transmitted disease, but have perfectly intact hymens and no physical trauma.  








During the CAC interview, L.M. gave specific information
about the abuse such as where appellant would abuse her and the positions he
would use.  Complainant repeated these details in extended trial testimony,
including a lengthy cross examination from her father, the pro se defendant
below.  She was unwavering in all details regarding the abuse.

Although appellant did not testify in his own defense, he
did present witnesses.  Some of those witnesses were hostile to his case;
others were more favorableCsuch as his mother, his sister, an
investigator appointed by the trial court, and most notably, a physician who
specializes in pediatric and adolescent gynecology.  While most of appellant=s witnesses either
testified to his innocenceCnamely his mother and sisterCor to highlight
appellant=s conspiracy theory regarding the charges, appellant=s expert directly
contradicted the State=s medical expert.  

According to appellant=s expert, it is
impossible for a man of appellant=s age with
appellant=s genitalia to have intercourse with a child of L.M=s age multiple
times without permanent damage to the child=s genitalia. 
Further, appellant=s expert testified that while he does not
specialize in child sexual trauma, that his medical knowledge supported only
one conclusion: if appellant had engaged a child sexually as alleged in this
case, there would be verifiable evidence.  The jury thus heard dueling medical
experts, both highly credentialed and respected in their fields, and both with
expertise in child female genitalia.  

Ultimately, the jury found appellant guilty of both counts
of aggravated sexual assault.  Appellant then requested the trial court appoint
him counsel for the punishment phase, which it did; appellant also elected for
the trial court to impose his sentence.  After allowing the new counsel
preparation time, the trial court heard punishment evidence, and sentenced
appellant to life imprisonment.  Appellant timely filed notice of appeal.  He
raises only one issue, namely, that the evidence is factually insufficient to sustain
his conviction.  We affirm.

 

 








Analysis

The
Evidence was Factually Sufficient

When
conducting a factual sufficiency review, we view the evidence in a neutral
light and will set the verdict aside only if the evidence is so weak as to make
the verdict clearly wrong and manifestly unjust, or if the contrary evidence is
so strong that the standard of proof, beyond a reasonable doubt, could not have
been met.  Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App.
2004).  While we have reviewed the entire record and have considered all
evidence presented at trial, we cannot assume the role of fact finder and
substitute our judgment for that of the jury.  See Zuniga v. State, 144
S.W.3d 477, 482 (Tex. Crim. App. 2004) (stating that appellate courts are not
to Afind@ facts or substitute their judgment
for that of the jury).  In this case, we must determine if the State=s evidence were too weak, and then
determine if appellant=s contrary evidence were so strong that the standard of proof
could not have been met.

A.      The State=s Evidence was not
Too Weak 

A grand jury indicted appellant for two counts of
aggravated sexual assault.  See Tex.
Pen. Code ' 22.021.  The State had to prove that
appellant penetrated L.M.=s sexual organ with his sexual organ while
she was younger than fourteen years old.  See id.  To prove its case,
the State=s case rested primarily on L.M.=s testimony.  L.M.
testified concerning the details of the sexual assaults.  She was unequivocal
regarding what happened, where it happened, and how it happened.  Although she
could not place an exact time or age on each occurrence perfectly, that is not
requiredCthus, the use of Aon or about@ language in an
indictmentCand L.M. clearly placed her age at younger than
fourteen during the time of the assaults.  L.M.=s testimony was
sufficient to prove each element of the offense.  See, e.g.,
Blackwell v. State, CS.W.3dC, 2006 WL 241131
at *14 (Tex. App.CHouston [1st Dist.] January 31, 2006, no
pet.) (stating the one witness ruleCthat the testimony
of one witness is sufficient to convict if the jurors believe that witness
beyond a reasonable doubt).  








B.      Appellant=s Contrary Theory
and Evidence was not so Strong that the Standard of Proof could not be Met

At trial, appellant attempted to prove two things.  First,
that there was a conspiracy by L.M.=s mother and the
mother=s family to get
appellant out of their lives.  Second, that it was medically certain L.M. had
not engaged in sexual intercourse with appellant.  We take each in turn and
hold that the evidence on these theories was not so strong that the standard of
proof could not be met.

As to appellant=s first theoryCconspiracyChis evidence was
scant.  He attempted to discredit certain witnesses= testimony, and
highlight possible prejudice.  However, in the end, appellant provided little
more than innuendo.  Concerning State employeesCsuch as his parole
officer, CAC workers, and police officersCappellant could do
no more than insinuate that they were child advocates who disfavored those
accused of crimes, or that they were aligned with L.M.=s family.  As for
L.M.=s family members,
it was no secret they did not want appellant in any of their homes.  However,
the testimony and evidence appellant elicited from both of these categories of
witnesses did not establish a conspiracy to accuse and then achieve a
conviction for aggravated sexual assault.  Neither did his speculative theory
amount to contrary evidence so strong that the standard of proof, beyond a
reasonable doubt, could not be met.








Regarding appellant=s second theoryCthat the medical
testimony proved conclusively he could not have sexually assaulted L.M. as
allegedCit was evidence
the jury was free to accept or reject.  Part of a jury=s role is to
resolve questions of witness credibility.  It is not uncommon to have dueling
witnessesCincluding expert witnesses.  However, the jury is free
to believe or disbelieve any witness=s testimony,
including experts.  See Feagins v. State, 142 S.W.3d 532, 540 (Tex. App.CAustin 2004, pet.
ref=d), cert.
denied, 126 S.Ct. 489 (U.S. 2005).  We cannot now sit as the jury and
decide to accept one expert=s testimony over another=s; this is
especially true when the jury seems to have adopted one expert=s view over the
other=s.  That is the
jury=s province. 
Therefore, we determine that this expert=s testimony was
not so strong that the standard of proof could not be met.  We overrule
appellant=s sole issue.

Conclusion

Having overruled appellant=s sole issue, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed September 5, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Because complainant is younger than 18 years= old, we use only her initials.





[2]  Appellant and Bennie Ross are complainant=s parents, and have another child together.  However,
they have never been married.





[3]  Upon appellant=s
motion, the State elected two instances of sexual abuse, though the jury heard
evidence of numerous instances of sexual abuse.





[4]  At trial, L.M. was seventeen years old.  However,
the abuse was alleged to have begun when she was ten or eleven years old.  The
medical examination took place when L.M. was thirteen years old.