

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00151-CR

---

FRANK NOBLES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 450th District Court
Travis County, Texas
Trial Court No. D-1-DC-21-301803, Honorable Brad Urrutia, Presiding

---

April 29, 2024

## CONCURRING OPINION ON REHEARING

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

I concur in the decision to deny rehearing but write to specifically explain why appellant's issue regarding the composition of the venire warrants rejection.

While the attack founded upon article 35.07 of the Texas Code of Criminal Procedure was unpreserved, that founded on the Texas and United States Constitutions was. Nevertheless, it proved deficient.

Appellant had to prove that: 1) the group alleged to be excluded is a distinctive group in the community; 2) the representation of the distinctive group in jury venires is not

fair and reasonable in relation to the number of such persons in the community; and 3) the underrepresentation is due to systemic exclusion of the group in the jury process. *Pondexter v. State*, 942 S.W.2d 577, 580 (Tex. Crim. App. 1996); *Feagins v. State*, 142 S.W.3d 532, 535 (Tex. App.—Austin 2009, pet. ref'd). Though not mentioned in this list, at least one other factor necessitates consideration. It sets the framework within which we define the distinctive group. That factor is eligibility to serve as a juror. Our Court of Criminal Appeals indicated as much in *Pondexter*, as did the Austin Court of Appeals in *Feagins*. Both rejected attacks like that by appellant due to the absence of evidence illustrating the percentage of eligible voters in the county who were within the distinctive group. *See Pondexter*, 942 S.W.3d at 580-81 (stating that "[w]hile on its face, ten percent of the array versus twenty-two percent county-wide raises an inference of unfairness or unreasonableness, appellant failed to show that the number of African-Americans who qualified for the selection process (registered voters, and those with driver's licenses or identification cards) were of the same or similar percentages as the population of the county"); *Feagins*, 142 S.W.3d at 537 (stating that many indicia impact who qualify for the selection process, including relative percentages of registered voters, licensed drivers, and adult population, and without "evidence representing what these figures are in Travis County or directly showing what percentage of African-Americans are eligible to serve on a jury, we are unable to conclude that 6% is not a proper number"). I reject the attack here for the same reason.

First, witnesses testified that some Travis County venires lacked the presence of African Americans. Several of these same witnesses also said that African Americans appeared on other venires. And, in so testifying, each apparently assumed that the

2

percentage of African Americans comprising the Travis County population was 9.1 percent. Indeed, no evidence of the actual percentage appears of record. At most, a witness was asked: "[d]o you **believe** a fair cross-section of the populous of Travis County as it relates to African-Americans is 9.1 percent?" (Emphasis added). Though she answered "yes," conclusory beliefs are not evidence. *See McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 394 (Tex. 2019) (comparing a nurse's "belief" about what was promised to a naked and unsupported opinion lacking probative force); *Texas Division-Tranter v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994) (describing subjective beliefs as "no more than conclusions" which are not competent evidence).

Second, and similarly missing, is evidence illustrating the percentage of African Americans within Travis County eligible to serve as jurors, even if we were to assume that African Americans, in general, comprised 9.1 percent of the population. Again, at most, a witness was asked if he "***believe[d]*** that the number of African-Americans who qualify for the jury selection process is the same as the census percentage of 9.1 percent?" (Emphasis added). Despite answering "yes," that means nothing for, again, conclusory beliefs are not evidence. But even if they were probative, then it would be reasonable to believe that a substantial proportion of the African American population in Travis County were children under 18 at the time of appellant's trial. Being under 18, they would not qualify for jury service. See TEX. GOV'T CODE ANN. § 62.102(1) (stating that a juror must be at least 18). That, in turn, would mean the distinctive group eligible to serve as jurors would be less than the purported 9.1 percent of African Americans residing within Travis County. And, being invited to conjecture, I too could speculate that other segments of the African American population (like segments of the Anglo, Hispanic,

Asian, and other populations) would fall under some other disqualification enumerated in § 62.102. That would further reduce the pivotal number against which systemic exclusion is compared.

In short, no group, racial or otherwise, should be systemically and impermissibly excluded from juror service. But, the onus falls upon a complainant to prove the impermissible aspect of their exclusion. Appellant did not do that under the tests supplied by *Pondexter* and reiterated in *Feagins*. His evidence was deficient. He proffered apples (conjectural ones at that) when the test required oranges. And, that is why I still concur in the rejection of his appellate issues and affirmance of his conviction.

Brian Quinn
Chief Justice

Parker, J., concurring.

Do not publish.

4