# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00811-CR

**Jesse Sedillo a/k/a Jesse Sedillo, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C-1-CR-21-202862, DENISE HERNANDEZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Jesse Sedillo a/k/a Jesse Sedillo, Jr. was convicted by a jury of driving while intoxicated (DWI). *See* Tex. Penal Code § 49.04(a). The trial court sentenced Sedillo to 120 days' confinement and a $2,000 fine, suspended imposition of the sentence, and placed him on community supervision for a period of nine months. *See* Tex. Code Crim. Proc. art. 42A.053(a)(1). In a single issue, Sedillo contends that the trial court erred by denying his motion to quash the jury array. We affirm the trial court's judgment of conviction.

## BACKGROUND

Sedillo filed a pretrial motion[1] asking that the trial court "strike [the] venire jury panel" because "Black and Hispanic or Latino jurors ha[d] been systematically excluded."

---

[1] Sedillo's motion was titled, "Motion to Compel a Venire Constituting a Fair Cross-Section of The Hispanic or Latino and Black Population of Travis County."

Citing census figures, he asserted that "33% of the Travis County population is Hispanic or Latino," and "9.4% of the Travis County population is Black." Attached to the motion were completed juror questionnaires for the 30-person venire; 25 venirepersons self-identified as white, one venireperson self-identified as Black, and four venirepersons did not provide their races. Sedillo argued that the venire's racial composition "violate[d] his Sixth and Fourteenth Amendment rights to an impartial jury" and resulted from "the significant disparity which exists between Hispanic or Latino and Black voters, as compared to White voters, in terms of possessing the identification necessary to be placed on the jury wheel which composes Travis County venires."

The trial court held a hearing on Sedillo's motion, at which he offered testimony from a single witness, Travis County criminal defense attorney Benjamin Blackburn. The court denied Sedillo's request to qualify Blackburn as an expert on the racial composition of Travis County juries. Blackburn testified instead about his personal observations of the racial makeup of Travis County venires as well as a research project he oversaw that utilized juror-questionnaire responses to quantify the races of Travis County venirepersons from June 2022 to July 2023. Blackburn explained that he used raw data obtained from the Travis County District Clerk's Office to create a report charting the racial proportions of approximately 10,200 venirepersons, constituting approximately 200 panels, both in aggregate and by court.

Sedillo offered into evidence two exhibits regarding the research: Blackburn's report on the compiled questionnaire data and an email exchange between one of his research assistants and the Travis County District Clerk's Office. The State objected that defense counsel had not laid the necessary foundation for the report, and—after attempting to do so—counsel offered the email exchange without obtaining a ruling from the trial court on the report's

2

admissibility.[2]  The trial court sustained the State's hearsay objection to the email exchange but changed its ruling after defense counsel asserted that the emails' contents were not offered for the truth of the matter asserted but for another purpose.  Specifically:

> to show that Mr. Blackburn has requested these open records requests through his employees and received data.  Data that we have discussed a little bit here on the stand.  So it's really for the purpose of showing that he has received it from the clerk's office, which is a record that he kept.

Concerning the results of his research, Blackburn testified that "the numbers . . . show that Hispanics and Blacks – th[ose] racial minorities are underrepresented." He testified that in one district court, "about 17 percent of the people who show up for jury selection are Hispanic and you'd expect to see twice as many as that."  The trial court, he testified, "actually d[id] better than most of the other misdemeanor courts.  And in that last year's worth of data, 14 percent of the people who were summoned to th[e] court were Hispanic, 3.3 percent were Black."

Blackburn testified that his personal experience corroborated those results.  He testified that he had tried approximately 50 to 100 cases to a jury over a 20-year career; that he had not had "any jury venires that have not had underrepresentation"; that "sometimes [his] knowledge comes from [his] personal observation – [his] eyes looking at people's skin color"; that it was common for him to "show up to jury selection[,] and there[ are] no African Americans, no Blacks who have been summoned to appear for jury selection"; and that "it can be a little harder to identify Hispanics – you know, whether or not they have a Hispanic name or

---

[2]  During the discussion regarding Blackburn's qualification as an expert, the State's attorney stated, "If Mr. Blackburn chooses to represent to the Court what his research showed, I will not object to that.  But I do not think he qualifies as an expert in the calling of venire panels in Travis County."

whether or not they self-identify as Hispanic or whether or not you can just look at a person and know their origin." Opining on the causes of the discrepancy, he testified that "this racially disparate impact . . . is based on the system of how jury summons are sent out to prospective jurors":

> We know that Blacks and Hispanics are more likely to get stopped. We know there is more likely to be a law enforcement interaction. We know that that interaction is more likely to result in a detention, more likely to result in a search, more likely not to result in a warning, more likely to result in an arrest, more likely that when they do get arrested that they are more likely to be denied bail and personal bond and that they sit in jail and are more likely to get pled out at jail call for a minor drug offense, which is going to result in a suspension of their driver's license.

> So when we show up to jury selection and say "Where are all the Black people?" well, if they don't have driver's licenses – if the way that you summons jurors is based on a driver's license, guess who gets a driver's license? People who have cars. Not people who ride the bus. Why don't we send out the jury summons to people who have pilot licenses? You think that won't create a lot of White people showing up? Why don't we send out the jury summons to people who subscribe to L[.]L[.] Bean? We don't do it because we know it's going to result in this disparity.

> Maybe when they set this up, this was the best system. But why don't we send jury summons to people on the welfare rolls or people on the unemployment rolls?

Citing the test established by the United States Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 364 (1979), the trial judge denied Sedillo's motion to quash the array but noted that she was "greatly concerned by the lack of representation of individuals of the global majority." She explained that she "would have liked to have heard from the statistician from the Texas Demographic Center, the Travis County Research and Planning Division and/or a representative from the District Clerk's" because "[a]ll of these individuals are trained experts in these statistics to provide an objective opinion on the data presented." She also advised, "[I]f

4

this type of argument is presented in another jury setting, I greatly encourage an individual to consider contacting these departments for data and for testimony."

Following a trial, Sedillo was convicted of misdemeanor DWI. This appeal followed.

**DISCUSSION**

In a single issue, Sedillo contends that he "should have had a jury venire panel which constituted a fair cross[-]section of the community." He argues that Texas's jury-selection process systematically excludes people who self-identify as Black and Hispanic and that the trial court's denial of his motion to quash the array deprived him of his Sixth Amendment right to an impartial jury. *See* U.S. Const. amend. VI; *Holland v. Illinois*, 493 U.S. 474, 480 (1990) ("The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)."). Sedillo asserts that the underrepresentation of Black and Hispanic venirepersons results from Texas's reliance on voter rolls and driver's licenses in compiling its list of eligible voters (the jury wheel).

## I. Travis County Jury-Selection System

During the hearing on Sedillo's motion to quash the array, the trial court admitted an affidavit sworn by the Travis County District Clerk, in which she articulated the process by which juries are empaneled in Travis County. Pursuant to subsection 62.001(a) of the Texas Government Code, the Texas Secretary of State's Office prepares its jury wheel from:

> (1) the names of all persons on the current voter registration lists from all the precincts in the county; and

5

(2) all names on a current list to be furnished by the Department of Public Safety, showing the citizens of the county who:

    (A) hold a valid Texas driver's license or a valid personal identification card or certificate issued by the department; and

    (B) are not disqualified from jury service under Section 62.102(1), (2), or (8).

Tex. Gov't Code § 62.001(a). Under section 62.002, a person is disqualified to serve as a petit juror unless the person is at least 18 years of age, is a U.S. citizen, and has not been convicted of misdemeanor theft or a felony. *See id.* § 62.002(1), (2), (8).

Names are randomly selected from the jury wheel "by the electronic system for receiving the jury summons notification"; at the time the affidavit was prepared, in June 2023, approximately four to six thousand potential jurors were summoned each week "for all the courts in Travis County" after being randomly selected. Before summonses are mailed to potential jurors, their names are screened for changes of address; summonses are mailed only to those individuals with addresses in Travis County.

A potential juror who receives a summons has approximately three weeks to register either online or in person. During the registration process, potential jurors must meet the qualifications in section 62.002, may claim exemptions listed in section 62.106, and are able to obtain postponements by providing dates of important conflicts for a 75-day period. *See id.* §§ 62.002, .106. The Clerk's Office is unable to verify all of the information entered by potential jurors, who certify that their information is true and correct. After registering, the potential juror is assigned to a jury trial. If a potential juror does not respond to the initial summons, she is sent a second reminder with a 30-day deadline.

## II.     Fair-Cross-Section Requirement

Although "the Constitution does not require proportionate representation of races on jury panels," *May v. State*, 738 S.W.2d 261, 269 (Tex. Crim. App. 1987), "[t]he Sixth Amendment requires that the jury panel from which the petit jury is selected represent a fair cross-section of the community," *Aldrich v. State*, 928 S.W.2d 558, 560 (Tex. Crim. App. 1996) (citing *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)).  The United States Supreme Court has created a three-prong test, applicable to cases involving Texas juries, by which a defendant may establish a prima facie violation of the fair-cross-section requirement:  "(1) the group allegedly excluded is a 'distinctive' group in the community; (2) the group was not fairly represented on the jury panel from which the petit jury was chosen; and (3) the underrepresentation resulted from a systematic exclusion of the group in the jury selection process."  *Id.* (citing *Duren*, 439 U.S. at 364.  The defendant need not be a member of the underrepresented group to have standing to raise the claim.  *Id.*  The State may rebut the prima facie violation by "showing that the disproportionate exclusion manifestly and primarily advances a significant governmental interest." *Id.* (citing *Duren*, 439 U.S. at 367–68).

We agree with both parties in this case that people who self-identify as Black or Hispanic are distinctive groups for purposes of the *Duren* analysis.  *See id.* ("We accept that Hispanics are a distinctive group in any community."); *Feagins v. State*, 142 S.W.3d 532, 535 (Tex. App.—Austin 2004, pet. ref'd) ("African–Americans are a distinctive group."); *see also Lockhart v. McCree*, 476 U.S. 162, 175 (1986) ("Our prior jury-representativeness cases, whether based on the fair-cross-section component of the Sixth Amendment or the Equal Protection Clause of the Fourteenth Amendment, have involved such groups as blacks; women; and Mexican-Americans.").

The second prong of the *Duren* test requires that Sedillo show that the representation in Travis County venires of people who self-identify as Black or Hispanic "is not fair and reasonable in relation to the number of such persons in the community." *See Duren*, 439 U.S. at 364. A showing of the distinctive groups' percentages of the community is "the conceptual benchmark for the Sixth Amendment fair-cross-section requirement." *Id.* The United States Supreme Court has not specified the method courts must use to measure the representation of distinctive groups in jury pools. *Berghuis v. Smith*, 559 U.S. 314, 329 (2010).

The evidence considered by the trial court was insufficient to ascertain the proportions of Travis County residents who self-identify as Black or Hispanic or those groups' representation in Travis County venires and, consequently, could not provide a basis for the court to find a prima facie fair-cross-section violation. At trial, Sedillo attempted to present evidence of the groups' underrepresentation from two sources: Blackburn's report comparing census data with juror-questionnaire responses from June 2022 to July 2023 and his personal, anecdotal observations from 20 years of practice in Travis County. However, the trial court never admitted the report,[3] and we may not consider it in our analysis. *See State v. Opare*, 583 S.W.3d 685, 692 (Tex. App.—Fort Worth 2018, no pet.) (recognizing that appellate court can consider unadmitted evidence when: "(1) the record clearly reflects that a jury saw, heard, or felt the unobjected-to item; or (2) the record clearly reflects that the trial court and the parties treated the evidence as admitted, and there is nothing about the evidence itself that requires discretion, interpretation, or

---

[3] Defense counsel offered the report into evidence, but the State objected that counsel had not laid the proper foundation. After questioning Blackburn regarding the report's preparation, however, counsel offered into evidence an email exchange between Blackburn and the Travis County District Clerk's Office without obtaining a ruling on the report's admissibility. The trial court admitted the email exchange once counsel clarified that it was not to be considered for the truth of the matter asserted.

8

authentication"); *cf. Cornish v. State*, 848 S.W.2d 144, 145 (Tex. Crim. App. 1993) (considering unadmitted juror information cards in evaluating *Batson* claim because trial court and parties treated them as if they were admitted).  The only admitted evidence of Blackburn's research project was the email exchange, which was offered "not to show . . . that there were 200 summoned jury lists or panels" but only to prove that he requested and obtained data from the clerk's office.  Reflecting the paucity of reliable statistical evidence, the trial court denied defense counsel's request to qualify Blackburn as an expert and—when denying Sedillo's motion—explained that it would have preferred testimony from a statistician trained "to provide an objective opinion on the data presented."

Other than the report, the sole evidence of underrepresentation came from Blackburn's personal experience of having selected approximately 50 to 100 juries over 20 years and having observed "hundreds and hundreds of panels" in that time.  We do not find his testimony alone sufficient to establish a prima facie fair-cross-section violation.  Blackburn testified that "racial minorities" were "almost always . . . under-represented" "when [he] show[ed] up for jury selection," that he largely based his determination of a venireperson's race on her skin color or whether she had a Spanish surname, that for this reason "it can be a little bit harder to identify Hispanics," that he could "walk out and see . . . [t]here [was] a Black on [his] panel," and that his "suspicion was validated" when he received "the raw data."  In light of the relatively small sample size encompassed by his experience, his reliance on census figures for the community's racial demographics, the lack of scientific rigor in his classification scheme, and the possibility of error from relying on surnames, we cannot say that his testimony establishes that people who self-identify as Black or Hispanic are underrepresented on Travis County venires.  *See Ovalle v. State*, 13 S.W.3d 774, 779 (Tex. Crim. App. 2000) ("[U]se of

9

general population figures and Spanish surnames involves a degree of uncertainty"); *Martinez v. City of Austin*, 852 S.W.2d 71, 74 (Tex. App.—Austin 1993, writ denied) ("Appellants have failed to bring forth in the record any census data, tax rolls, jury-service records, or other data to demonstrate the alleged disparity.  By failing to show evidence of the percentages of the minority group residing in the community or serving on the panel, appellants have not established a prima facie case under *Duren*."); *Weeks v. State*, 396 S.W.3d 737, 745 (Tex. App.—Beaumont 2013, pet. ref'd) ("On this record, however, the trial court could reasonably find that Weeks failed to present sufficient evidence to support his claim that the specific jury-selection-process feature he targeted violated his Sixth Amendment right to an impartial jury."); *see also Howell v. Superintendent Rockview SCI*, 939 F.3d 260, 266 (3d Cir. 2019) (explaining that *Duren* claim "'must be supported by statistical evidence,' beginning with the percentage of [distinctive group] in the community," and concluding that statistician's analysis, which only considered completed and returned juror questionnaires and not unanswered questionnaires, was unreliable (quoting *United States v. Weaver*, 267 F.3d 231, 239 (3d Cir. 2001))).  As the United States Supreme Court has explained, an appellant cannot "make out a prima facie case merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation." *Berghuis*, 559 U.S. at 332.

Because no evidence in the record established the population in Travis County who qualify for jury service and who self-identify as Black and/or Hispanic, the trial court could reasonably conclude that Sedillo had failed to demonstrate underrepresentation or prove a prima facie fair-cross-section violation.  *See Duren*, 439 U.S. at 364; *see also Pondexter v. State*, 942 S.W.2d 577, 580–81 (Tex. Crim. App. 1996) ("[A]ppellant failed to show that the number of African–Americans who qualified for the selection process (registered voters, and those with

10

driver's licenses or identification cards) were of the same or similar percentages as the population of the county."); *Feagins*, 142 S.W.3d at 537 ("With no evidence representing what these figures are in Travis County or directly showing what percentage of African–Americans are eligible to serve on a jury, we are unable to conclude that 6% is not a proper number.").[4]

Accordingly, the trial court did not err by denying his motion to quash the jury array. We overrule his only issue.

## CONCLUSION

Having overruled Sedillo's sole issue on appeal, we affirm the trial court's judgment of conviction.

_____

Rosa Lopez Theofanis, Justice

Before Justices Baker, Smith, and Theofanis

Affirmed

Filed: August 30, 2024

Do Not Publish

---

[4] Because Sedillo failed to demonstrate that people who self-identify as Black or Hispanic are underrepresented on Travis County jury venires, we need not address the existence of systematic exclusion. *See Aldrich v. State*, 928 S.W.2d 558, 560 (Tex. Crim. App. 1996) ("Appellant has failed to make a prima facie showing of a fair-cross-section violation. We accept that Hispanics are a distinctive group in any community, but appellant has not shown that Hispanics were actually underrepresented on the jury panel in his case.").

11