# IN THE SUPREME COURT OF TEXAS

No. 17-0733

MCALLEN HOSPITALS, L.P. D/B/A MCALLEN MEDICAL CENTER
AND SOUTH TEXAS HEALTH SYSTEMS, PETITIONERS,

V.

YOLANDA LOPEZ, SHERYL HAMER, ELMER DEGUZMAN
AND RICHARD WECKER, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

**Argued March 12, 2019**

JUSTICE BUSBY delivered the opinion of the Court.

In this breach-of-contract case, we consider whether there is legally sufficient evidence that an employer impliedly agreed to change the compensation of four employees from payment based on hours worked to fixed annual salaries. We hold there is no evidence that would have allowed reasonable, fair-minded people to find that the employer and its employees had a meeting of the minds on a fixed amount of pay. We therefore reverse and render judgment that the employees take nothing.

## I. Background

Yolanda Lopez, Sheryl Hamer, Elmer DeGuzman, and Richard Wecker (the Nurses) worked as house supervisor nurses for McAllen Hospitals, L.P. (the Hospital). As house

supervisors, the Nurses served as administrative representatives and supervised other nurses at the Hospital. The Nurses were paid based on the hours they worked.

In 2011, the Nurses sued the Hospital for breach of contract, among other things. They alleged the Hospital had promised to pay them annual salaries from 2007 through 2010 and breached that agreement by failing to pay them the full annual amounts. As evidence of the implied agreement, the Nurses relied on their 2009 and 2010 performance reviews listing an "Annual Rate" of pay, payroll change forms providing the Nurses were to receive a certain amount of "salary," and Hospital policies explaining that "exempt" employees (the classification the Hospital gave the Nurses) are paid to perform a job, while "nonexempt" employees are paid by the hour. The Nurses testified they had expected to be paid the salaries listed in the performance reviews and their supervisor did not inform them they would be compensated at an hourly rate. The Hospital argued it consistently paid the Nurses based on the hours they worked and the Nurses' pay rates were calculated by dividing the annual salaries by 2080 hours (which the Hospital deemed full-time working hours). In the Hospital's view, the Nurses were only entitled to the full sum if they worked full time during a given year, which they did not.

Question one of the jury charge asked: "Did Plaintiffs and Defendant agree that Plaintiffs would receive a fixed amount of pay?" In connection with this question, the trial court instructed the jury: "In deciding whether the parties reached an agreement, you may consider what they said in light of the surrounding circumstances, including any personnel files and policies, and including course of dealing. You may not consider the parties' unexpressed thoughts or intentions."[1] The

---

[1] The Nurses unsuccessfully objected to the inclusion of "course of dealing" in the instruction. They do not challenge the instruction on appeal.

jury found that the parties agreed the Nurses would receive a fixed amount of pay and that the Hospital breached the agreement. The jury awarded total damages of $389,014.68 for the period November 23, 2007 through December 31, 2010. The trial court rendered judgment accordingly.

The Hospital appealed, arguing the evidence was legally and factually insufficient to support the jury's findings of an implied agreement and breach, and evidence of the Nurses' exempt status was inadmissible. The court of appeals affirmed, concluding the evidence admitted in the trial court "would enable reasonable and fair-minded people to find that the Hospital agreed to pay the Nurses a fixed amount." 567 S.W.3d 748, 751 (Tex. App.—Corpus Christi–Edinburg 2017). The court of appeals also held that even if the evidence challenged by the Hospital was improperly admitted, the error was harmless because other documents admitted without objection contained the same information. *Id.* at 752.

The Hospital filed a petition for review with this Court, raising three issues. First, the Hospital asserts the evidence is legally insufficient to support the jury's finding that the Hospital agreed to pay the Nurses fixed salaries. Second, the Hospital argues that because no contract for fixed pay existed, the evidence was legally insufficient to support the jury's finding that the Hospital breached that contract. Third, the Hospital contends the trial court erred in admitting evidence regarding "exempt" and "nonexempt" employee classifications under the Fair Labor Standards Act. We granted the Hospital's petition for review. 62 Tex. Sup. Ct. J. 308 (January 18, 2019).

## II. Analysis

Because we conclude the first issue is dispositive, we begin with that issue. As we stated in *City of Keller v. Wilson*, "[t]he final test for legal sufficiency must always be whether the

3

evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." 168 S.W.3d 802, 827 (Tex. 2005). We "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* "It is the province of the jury to resolve conflicts in the evidence," but the jury must do so reasonably. *See id.* at 820, 827. "Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 613 (Tex. 2016).

The Nurses argue that the Hospital's agreement to pay them fixed salaries was an implied contract. The difference between implied and express contracts is the "character and manner of proof required to establish them." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). Both express and implied contracts require the element of mutual agreement, "which, in the case of an implied contract, is inferred from the circumstances." *Id*. "The conception is that of a meeting of the minds of the parties as implied from and evidenced by their conduct and course of dealing, . . . the essence of which is consent to be bound." *Id*.

As the parties alleging breach of contract, the Nurses had the burden of proving the existence of a valid contract. *TRO-X, L.P. v. Anadarko Petroleum Corp.*, 548 S.W.3d 458, 464–65 (Tex. 2018). The Nurses argue that the Hospital impliedly agreed to pay them a fixed annual salary starting in 2007 and continuing through 2010. Consistent with this timeline, the damages

4

portion of the jury charge specified that the alleged agreement was to pay the Nurses from November 23, 2007 through December 31, 2010. The charge also instructed the jury that in deciding whether the parties reached an agreement, it could consider the parties' course of dealing and the surrounding circumstances, including personnel files and policies. We therefore focus our analysis of the evidence primarily on the parties' course of dealing and the circumstances surrounding the alleged formation of the fixed-salary contract in 2007.

As to course of dealing, the evidence not only fails to support the Nurses' position but shows that the Hospital intended to pay the Nurses based on the hours they worked. Before filing suit, each of the Nurses had worked for the Hospital for years. Lopez had been employed by the Hospital since 1975, Hamer and Wecker began working for the Hospital around 1984, and DeGuzman started in 2000. The Nurses agreed that during the time period at issue, they were paid based on the hours they worked. Despite the significant differences between the annual salaries to which they claimed to be entitled and the wages they actually received, none of the Nurses complained of the discrepancy before filing their lawsuit. At the time of trial, Hamer and DeGuzman were still employed by the Hospital and were receiving an hourly wage. Thus, the record shows the Hospital paid the Nurses based on the hours they worked, and there are no indications from the course of dealing between the parties that the Hospital ever intended to do otherwise. Reasonable and fair-minded people could not infer from the Hospital's course of dealing that it agreed to pay the Nurses a fixed annual salary. *See City of Keller*, 168 S.W.3d at 827.

The Nurses respond by pointing to certain surrounding circumstances: their annual performance reviews, payroll change forms, provisions of the Hospital's employee handbook, and

5

policies circulated by the Hospital's Accounting and Human Resources Departments. We conclude that this evidence does not show a meeting of the minds between the Hospital and the Nurses on an agreement regarding fixed pay beginning in 2007. Although the Nurses' choice to continue their employment with the Hospital could indicate agreement and acceptance by performance, the Hospital must first have given the Nurses some clear indication of its intent to be bound to pay them a fixed salary. *See Haws & Garrett Gen. Contractors*, 480 S.W.2d at 609. As we explain, none of the circumstances cited by the Nurses indicates that the Hospital had such an intent.

**A. Performance Reviews**

The record includes the Hospital's annual written performance reviews of the Nurses for the years 2007 through 2010, except that Hamer's 2007 review is missing. The reviews, which were completed in June or July of each year, contain an evaluation of each nurse's performance for the prior twelve months and state what each nurse's pay would be going forward. These reviews cannot serve as evidence of the Hospital's intent to contract with the Nurses for a fixed salary for two reasons.

First, the reviews are inconsistent with the Nurses' theory of contractual formation. If the Hospital intended to be bound to pay the Nurses a fixed annual salary from 2007 through 2010, as the Nurses contend, then circumstances surrounding the formation of the alleged agreement in 2007 would indicate that intent. To the contrary, the 2007 and 2008 performance reviews state the

Nurses' new base rates of pay in dollars "per hour."[2]  Only in 2009 and 2010 do the reviews list an "Annual Rate."[3]

Second, the Hospital's employee handbook states: "A performance review is not a contract or a commitment to provide a salary increase, a bonus, or continued employment.  It is a communication process aimed at facilitating optimum employee performance."  The Nurses argue the Hospital's reliance on the disclaimer in the handbook is misplaced because the performance reviews were not offered as express contracts themselves but rather as circumstantial evidence of implied contracts.  But the question before us is not whether the handbook disclaimer prevents the performance reviews from being admitted into evidence for any purpose.  Instead, the question is whether those reviews can provide evidence of a commitment by the Hospital to pay a fixed salary.  The handbook expressly barred the jury from giving weight to the reviews for that purpose.  *See Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283–84 (Tex. 1993) (per curiam) (recognizing use of handbook disclaimer to prevent contract formation).

The Nurses also testified at trial that they (1) were never told they were going to be paid an hourly rate during the years at issue, and (2) believed the Hospital had promised them an annual salary.[4]  The Nurses were consistently paid based on the hours they worked, however, and they attributed their belief in a promised salary to their written performance reviews and to annual discussions they had with their supervisor regarding the reviews.  These oral discussions, which

---

[2] One page of Hamer's 2008 review does list what appears to be an annual pay rate, but elsewhere in the form it states an hourly rate.

[3] Hand-written notations were added to most of the 2010 reviews, marking out "Hourly" and writing in "Annual."  "Hourly" is scratched out on Wecker's 2010 review and what appears to be an annual amount of pay is written in; however, "Annual" is not handwritten on the form as it is for the other Nurses.

[4] Not all of the Nurses consistently testified that the annual salary they were promised was a "fixed amount of pay," as the jury charge required.  At certain points, DeGuzman and Wecker testified that they had to work full-time hours to be entitled to the annual salary, which they did not do.

7

the written reviews specifically contemplated, were part of the review "communication process" and thus covered by the handbook disclaimer.

In other portions of their testimony, the Nurses stated their belief that they were promised annual salaries without identifying a basis for that belief. As to those statements, "[i]t is well settled that the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection." *Dall. Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 380 (Tex. 1956). Consequently, the Nurses' testimony would not enable reasonable and fair-minded people to find the Hospital intended to enter an agreement for fixed pay.

### B. Payroll Change Forms

The supervisor who reviewed each nurse also completed a payroll change form for that nurse and submitted it to the Hospital's Payroll Department, which approved the change. The record contains no forms for 2007, but it does include forms for each nurse that were effective in July of 2008, 2009, and 2010. All of the July 2008 payroll change forms include both a printed annual "salary" and what appears to be a handwritten hourly rate.[5] With one exception, the hourly rates on the 2008 payroll change forms correspond with the hourly rates stated in the Nurses' 2008

---

[5] The handwritten hourly rates for Lopez and DeGuzman, when multiplied by 2080, match the printed salaries on the payroll change forms. The handwritten hourly rate listed for Wecker does not correspond with the printed salary on the form; however, the handwritten rate also does not correspond with the hourly rate listed on Wecker's 2008 performance review. The correct hourly rate from his 2008 performance review, when multiplied by 2080, does match the printed salary on his 2008 payroll change form. The handwritten hourly rate on Hamer's 2008 payroll change form does not correspond with the printed salary when multiplied by 2080, and there does not appear to be any way to make those numbers match.

performance reviews.[6] All of the 2009 and 2010 payroll change forms list a "salary" and no hourly rate.

As with the Nurses' 2007 and 2008 performance reviews, the payroll change forms do not support the Nurses' theory that the Hospital intended to pay them a fixed annual salary starting in 2007. The 2007 payroll change forms are not in the record, and the July 2008 forms state both an hourly and an annual rate of pay. Although the jury could have inferred from the 2008 forms that the Hospital intended to change the Nurses' pay from an hourly to an annual rate, the evidence is equally consistent with a simple change in the manner in which these forms were filled out by the Hospital's Human Resources Department, unconnected to any change in the form of pay from an hourly wage to an annual salary. When circumstantial evidence "is susceptible to multiple, equally probable inferences, requiring the factfinder to guess in order to reach a conclusion[,]" it is in legal effect no evidence. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015). Because the 2008 payroll change forms are susceptible to equally probable inferences regarding the Hospital's intended form of pay, they are no evidence of its intent to contract with the Nurses for fixed pay beginning in 2007.

The 2009 and 2010 payroll change forms do state annual salaries, but there is no evidence linking those forms to an intent by the Hospital to pay fixed salaries beginning in 2007. Moreover, unlike the performance reviews, the payroll change forms were not signed by the Nurses and nothing in the record indicates the Nurses ever saw the forms. Thus, the Nurses could not have accepted any promise the Hospital made in those forms by performance. *See generally*

---

[6] The handwritten hourly rate on Wecker's 2008 payroll change form does not correspond with the rate provided in his 2008 performance review.

9

*Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) ("A promise, acceptance of which will form a contract, 'is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'" (quoting Restatement (Second) of Contracts § 2(1) (Am. Law Inst. 1981)).

### C. Employee Handbook Provisions

The Nurses argue that provisions of the Hospital's employee handbook distinguishing between exempt and nonexempt employees show the Hospital treated the Nurses like salaried employees and thus provide some evidence of the Hospital's intent to contract with the Nurses for fixed pay. The Hospital does not dispute that the Nurses were classified as "exempt employees." The handbook states that "[nonexempt] employees are eligible for overtime pay for all hours worked over forty hours in a work-week," while "exempt employees are not eligible for overtime pay" and "may not be eligible for callback pay." According to the handbook, nonexempt employees are required to record their "hours worked each day," while exempt employees are required to record their "presence each day." In addition, "[e]veryone is expected to take at least thirty minutes for lunch each day," and nonexempt employees who are required to work through their lunch break will be paid for that time. The handbook does not address exempt employees who work through their lunch break.

As with the performance reviews, however, the handbook expressly bars the jury from giving contractual weight to these provisions. The handbook includes its own disclaimer, which states:

> This Employee Handbook is designed to provide you with information concerning [the Hospital] and sets out informational guidelines. *It is not a contract of employment.* Conditions from time to time may require [the Hospital] to supplement, modify or eliminate benefits, work rules and guidelines described in

10

this Handbook. [The Hospital] reserves the right to exercise its discretion, and unilaterally make changes, including both deletions from and additions to this Handbook. Such changes will be communicated to employees through normal channels and will become effective as indicated. If you have any questions about the content of this book, please consult your supervisor or a representative of the Human Resources Department.

(Emphasis added). As we have previously held, an employee handbook that contains such a disclaimer of contractual intent "is not a contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam); *see also Fed. Express Corp.*, 846 S.W.2d at 283; *Brown v. Sabre, Inc.*, 173 S.W.3d 581, 589 (Tex. App.—Fort Worth 2005, no pet.) (concluding a disclaimer demonstrated the employer's "clear intent not to create any binding contractual rights through its employee handbook"). Given this disclaimer, no reasonable jury could infer from the Hospital's statements in the handbook an intent to contract with the Nurses for fixed pay.

**D. Hospital Policies**

Finally, the Nurses point to several written policies issued by the Hospital's Human Resources Department. One policy elaborates on the overtime principles discussed in the handbook, including that exempt employees are not entitled to overtime pay. This policy further notes the Hospital "may . . . elect to pay exempt employees above their regular weekly salary in other situations." Another policy expands a bit on the handbook's provisions regarding benefit eligibility for full-time, part-time, temporary, and per diem employees, as well as for students and interns.

A third policy goes into more detail than the handbook about nonexempt employees receiving approval for overtime, when time is considered hours worked, and the procedure for dealing with unauthorized work time. The policy reiterates that nonexempt employees "are required to accurately record and report all hours worked," but it does not discuss time-keeping

11

requirements for exempt employees. The policy also provides that "[g]enerally, under the Fair Labor Standards Act (FLSA), exempt employees are paid to perform a job and nonexempt employees are paid for hours worked."

It is unclear whether these policies were intended to stand alone or were changes or additions to the employee handbook. The policies speak to topics that are at least generally touched upon within the handbook and, for the most part, provide additional procedures or explanations regarding those topics. To the extent the policies are additions to the handbook, which the Hospital reserved the right to make, the handbook's disclaimer prevents them from serving as evidence of the Hospital's intent to contract with the Nurses.

Even if treated as separate from the handbook, however, these policies do not provide a basis for reasonable and fair-minded people to infer that the Hospital intended to provide the Nurses a fixed amount of pay. The record contains no evidence that any of the policies were in force when the alleged agreement was formed in 2007. Nor do the policies provide that exempt employees will be paid fixed salaries. The policies generally explain that exempt employees are "paid to perform a job" and not entitled to overtime pay. Even if the Nurses are correct that employees classified as "exempt" under the FLSA generally are entitled to payment on a salary or fee basis, this generalization is not evidence that the parties in this particular case agreed the Nurses would receive a fixed amount of pay. Indeed, the FLSA permits deductions from exempt employees' salaries (including for weeks they do not work), *see* 29 C.F.R. § 541.602, and one of the policies contemplates situations in which exempt employees will be paid more. In addition, the course-of-dealing evidence shows that the parties agreed the Nurses, although categorized as exempt employees, would be paid based on the hours they worked and not receive overtime.

12

"When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Suarez*, 465 S.W.3d at 634 (quoting *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 & n.3 (Tex.1993)). Here, the Hospital's policies create no more than a suspicion of the Hospital's intent to contract for a fixed amount of pay; therefore, they are no evidence of the Hospital's intent to do so. *See id.*

### III. Conclusion

In summary, the evidence before the jury was insufficient to establish the Hospital's intent to be bound by an agreement to pay the Nurses fixed annual salaries. *See generally Haws & Garrett Gen. Contractors*, 480 S.W.2d at 609. The course of dealing among the parties demonstrates only that the Nurses were paid based on the hours they worked, the performance reviews and employee handbook are subject to explicit disclaimers of contractual intent that prevent them from serving as evidence of the Hospital's agreement to pay the Nurses fixed salaries, and the Hospital's policies are either subject to the handbook's disclaimer or constitute no more than a scintilla of evidence regarding the Hospital's contractual intent. Even viewed in the light most favorable to the verdict, the evidence is insufficient to allow reasonable, fair-minded people to conclude there was a meeting of the minds between the Hospital and the Nurses as to the issue of fixed pay. Consequently, we hold the evidence was legally insufficient to support the jury's finding that the Hospital agreed to pay the Nurses a fixed salary. Because there was no agreement over fixed pay, the evidence was likewise insufficient to support the jury's verdict that the Hospital breached that agreement.

13

Having concluded the Hospital is entitled to judgment in its favor, we do not reach its third issue regarding the admission of evidence of exempt and nonexempt employee status under the FLSA. We reverse the court of appeals' judgment and render judgment that the Nurses take nothing.

_____
J. Brett Busby
Justice

**OPINION DELIVERED:** May 17, 2019