

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0636-19

### MICHAEL ANTHONY HAMMACK, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### HUNT COUNTY

**KELLER, P.J., filed a dissenting opinion in which KEEL, J., joined.**

The offense charged here requires Appellant to "know" that taking or retaining his daughter violated the "express terms" of the temporary custody order. The custody order granted "sole" custody of his daughter to a state agency. Appellant was told that the agency was granted "custody" but was not told that it was "sole custody," and he was never served with the order. The only other evidence suggesting that Appellant was aware of the agency having sole custody was the testimony of government employees surmising that he must have known that. All of this evidence is insufficient to show that Appellant knew that taking or retaining his daughter violated a "sole

custody" provision in the order.

Both the statute defining the offense and the indictment charging the offense make it clear that Appellant had to "know" that his conduct violated the "express terms" of the order. The statute provides in relevant part:

> A person commits an offense if the person takes or retains a child younger than 18 years of age . . . when the person *knows* that the person's taking or retention violates the *express terms* of a judgment or order, including a temporary order, of a court disposing of the child's custody.[1]

In accordance with the statute, Appellant's indictment alleged that he:

> did then and there intentionally or knowingly take or retain Daphney Hammack, a child younger than 18 years of age, when the said defendant *knew* that said taking or retention violated the *express terms* of a judgment or order of a court disposing of the child's custody, to-wit: Order for Protection of a Child in an Emergency signed by the judge of the 354th District Court of Hunt County Texas on or about February 27th, 2018.[2]

Part 3.1 of the temporary order sets out the "express terms" that are relevant here: "IT IS ORDERED that the Department is named temporary *sole* managing conservator of the child, with all of the rights and duties listed in § 153.371, Texas Family Code, including the right of physical possession until a full adversary hearing is held."[3] To show that Appellant knowingly violated the express terms of this order, it is not enough to show that Appellant knew that the order gave the Department[4] "custody." The State had to show that he knew that the order deprived him of all of his rights regarding his daughter.

---

[1] TEX. PENAL CODE § 25.03(a)(1) (emphasis added).

[2] Emphasis added.

[3] Emphasis added.

[4] Texas Department of Family and Protective Services.

There is simply no evidence of that. On February 23, Amber Davidson went to Appellant's home to discuss concerns about Appellant's sixteen-year-old daughter. He told her to get off his property. She said that she was going to have to get a court order, and he said that that would be her best bet. On February 27, she obtained the court order, and the authorities picked the daughter up at school. Davidson made a phone call to Appellant to let him know that they had "a Writ of Attachment, Order of Protection, to pick up [his daughter] from school. We picked her up from school and that we had her back at the office." In her opinion, Appellant was "fully aware" that the Department "has custody at this point." According to Davidson, Appellant "understood that [she] had the Court Order at that point." But all she had told Appellant at this point was that they had an order and that the order gave the Department the authority to pick up his daughter. She did not tell him that the order awarded the Department "sole custody." Her opinion that he was aware that the Department had "custody" and that there was a "court order" might be correct, but neither of these conclusions indicate that Appellant knew that the Department had "sole custody." And if by "custody," Davidson meant "sole custody," her surmise that he was aware of the Department having sole custody lacked any support.

Some time after the phone call, the daughter escaped from the Department. Davidson and Rhonda West went to Appellant's house to try to serve the order. But they never served the order. Appellant told them to get off his property, and no one tried to leave a copy of the order on his doorstep. According to Davidson, she waited at her car while the police talked to Appellant, but no one gave a copy of the order to a police officer to serve Appellant or at least to try to serve him, and failing that, to leave the order on his doorstep. According to West, she and Davidson "proceeded to knock on the residence door to serve Mr. Hammack with a court order, letting him be aware that

we had taken custody of" his daughter. West testified that she identified herself and Davidson as being with the Department and "explain[ed] to him why [they] were there." But she admitted in her testimony that she did not "detail" the order or lay out all of the provisions of the order. West said that there was no doubt in her mind that Appellant "understood that an order had been issued by the Court to retain [his daughter] in [the Department's] custody." West agreed, though, that "custody" does not mean everything in an order with regard to what the rights of a party are, and that "unless you actually read the order, you won't know." Again, being aware that the Department had "custody" and that there was a "court order" does not mean that Appellant was aware that the Department had been awarded "sole custody." And if by "custody," West meant "sole custody," nothing in the record supports her surmise.

West also testified that she did not send a copy of the order to Appellant by mail, FedEx, or certified mail. She initially testified that Davidson mailed him a copy, but she then acknowledged that she might be mistaken if Davidson had not testified to mailing the order to Appellant. And Davidson had not testified to mailing the order.

No one handed Appellant a copy of the order. No one mailed him a copy of the order. No one left a copy of the order at his home. No one read the order to him. No one told him that the order awarded "sole" custody to the Department. The statute requires knowledge of the "express terms" of an order. "Custody" is not the same as "sole custody." An order could have given Appellant and the Department shared custody. In that case, his actions in taking or retaining his daughter would not have violated the order.

The State had to prove that Appellant was aware not only that the order awarded custody to

the Department, but that it also deprived him of any kind of custody.[5]  The record in this case contains no evidence that Appellant was aware of that.  And to the extent family protective workers surmised that he must have known that, their surmises were unsupported and do not constitute sufficient evidence.[6]

I respectfully dissent.

Filed: May 19, 2021

Publish

---

[5]  *See Id.* § 6.03(b) (definition of "knowing" culpable mental state).

[6]  *See Curlee v. State*, No. PD-0624-20, 2021 Tex. Crim. App. LEXIS 371, (Tex. Crim. App. April 14, 2021) ("A playground is not necessarily 'open to the public' due to the lack of a fence, and, absent other evidence, a fence, even an unlocked one, tends to show that a playground is closed to the public.  Smejkal's factually unsupported opinion that the playground was 'open to the public' does not change that."); *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 394 (Tex. 2019) ("the naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection").