

# NUMBER 13-22-00091-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**IDEA PUBLIC SCHOOLS,** **Appellant,**

**v.**

**WYATT TRUSCHEIT,** **Appellee.**

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Silva**

This case involves breach of contract claim brought by appellee Wyatt Truscheit against appellant IDEA Public Schools (IDEA). IDEA appeals the trial court's order denying its amended plea to the jurisdiction. IDEA contends it was entitled to dismissal because: (1) it is entitled to government immunity, which was not waived under the evidence presented; and (2) "[t]o the extent the trial court found that there were genuine

issues of material fact concerning jurisdiction, same was error." We reverse and render.

## I.    BACKGROUND

Truscheit brought suit against IDEA for breach of contract, seeking damages from the breach as well as reasonable and necessary attorney's fees. According to Truscheit's first amended petition,[1] he entered into a contract with IDEA on November 12, 2012, to serve as IDEA's chief financial officer (CFO). Truscheit's contract was signed only by him and IDEA's chief executive officer (CEO), Thomas Torkelson. The contract, which was attached to Truscheit's amended petition, stated that "[t]he [CEO] of [IDEA] is authorized to execute this [c]ontract on behalf of IDEA." Truscheit's amended petition maintained that Torkelson "possess[ed] all authority vested in him by the charter, charter amendments, by-laws, and applicable statutory and regulatory provisions" which included the power to "*select and terminate charter school employees or officers.*" According to Truscheit, although IDEA's Board of Directors (Board) did not sign the contract, it did "take[] action with respect to budgetary, tax, regulatory[,] and personnel matters," which Truscheit argued "had the legal effect of approving the [c]ontract and the expenditure of state funds in connection with the [c]ontract."

The contract provided for Truscheit to receive a salary plus performance bonuses, actual and incidental costs related to the biweekly commute to and from California to the Rio Grande Valley, and reasonable living expenses and transportation while in the Rio Grande Valley. The contract included a provision that "[u]pon termination of the

---

[1] Truscheit filed his original petition on August 3, 2020. IDEA filed its initial plea to the jurisdiction on September 4, 2020, prompting Truscheit to file his amended petition on October 28, 2021.

employment or removal from the position of [CEO] of [Torkelson], this employment contract will be terminated and all amounts remaining hereunder will be paid to the [CFO] in a lump[ ]sum payment." Further, the contract provided that Truscheit's "compensation salary and payment thereof over the term of [the] contract by IDEA shall be irrevocable and unconditional." The contract was originally set to expire on June 1, 2016, but was extended by two subsequent contract amendments until December 31, 2022. Both amendments were signed only by Torkelson and Truscheit. Both amendments state they were executed "on behalf of IDEA" and "[a]pproved by the [CEO] of IDEA."

According to Truscheit, Torkelson resigned from CEO in April 2020, thus terminating Truscheit's contract and entitling him "to a lump sum payment of the remaining salary and bonuses which would have been paid to him through December 31, 2020.[2]" However, Truscheit "continued to work for IDEA as CFO with the expectation that he would be paid the amounts due to him and with the intent to enter into a new employment contract with IDEA." Instead, IDEA terminated Truscheit's employment without explanation on July 16, 2020.[3] Truscheit alleged that IDEA has failed to pay him the lump sum owed under the contract.

IDEA's amended plea to the jurisdiction[4] asserted that it was entitled to

---

[2] Truscheit's brief asserts that he is due "a lump sum payment of the remaining salary and bonuses which would have been paid to him through December 31, 2022." Further, the contract amendment includes a handwritten change from "December 31, 2020," to "December 31, 2022," that appears to be initialed by both Torkelson and Truscheit.

[3] IDEA contends that "Truscheit resigned as CFO of IDEA and hand-scribed that he 'retired' on his resignation letter."

[4] IDEA amended its plea to the jurisdiction on November 12, 2021, following Truscheit's amended petition.

governmental immunity as an open-enrollment charter school. IDEA went on to argue that the contract was not "properly executed" on behalf of IDEA and thus immunity was not waived pursuant to Chapter 271 of the Texas Local Government Code. Specifically, IDEA asserted that IDEA's Board was required to approve Truscheit's contract for it to be properly executed but had not done so. IDEA attached three affidavits to its plea. The first affidavit was from Joann Gama, IDEA's superintendent since July 1, 2014. Gama averred that, despite her routine interaction with the Board, Torkelson, and Truscheit, she was unaware of Truscheit's contract until May 2020. According to Gama, "[n]one of the other chief-level executives[5] within IDEA had employment contracts up until August 2020." Thereafter, "the Board approved contracts for [other] chief-level executives at its July 17, 2020 meeting and authorized [her] to issue employment contracts." Gama stated that the Board did not, however, authorize Truscheit's contract or its amendments, or delegate the authority to Torkelson to do so.

The second affidavit was sworn to by Carlo Hershberger, IDEA's senior vice president of finance and interim CFO. Based on Hershberger's review of IDEA's financial records, Truscheit was paid with public funds.[6]

The third affidavit was sworn to by Jessica Hess, IDEA's vice president of Board relations and governance. Hess stated that her responsibilities include preparing and maintaining "board business records including meeting agendas, meeting minutes[,] and

---

[5] In a separate paragraph, Gama noted that the Board did authorize Torkelson's contract, but stated it has "[o]therwise . . . been IDEA's policy and practice that employees are employed at-will." Torkelson's contract and amendments were attached to Gama's affidavit.

[6] "'Public funds' means funds of the state or of a governmental subdivision of the state." TEX. GOV'T CODE ANN. § 552.003(5).

4

board packets (containing a record of all documents presented to the [B]oard)." Hess "reviewed the Board's meeting agendas and meeting minutes since 2011" and found that the "documents do not reflect that the Board was ever presented with or approved any contract between IDEA and [Truscheit]."

IDEA subsequently filed the affidavit of Alfred Lopez in support of its plea. Lopez has been a member of IDEA's Board since 2015. Like Gama, Lopez swore that he was unaware of Truscheit's contract until May 2020. Lopez also averred that "[t]he Board has never been presented the [c]ontract or taken a vote to authorize the [c]ontract during [his] tenure . . . , nor has it ever appeared on a Board agenda for approval or been discussed in executive session." Additional affidavits were provided by Thomas Sage, IDEA's outside counsel, and Leanne Hernandez, IDEA's newly hired CFO. Sage testified that he drafted the amendments to Truscheit's contract but not the original. After drafting the amendments, Sage "expressly advised and directed [Torkelson] and [Truscheit] that the Board needed to be presented with and take action to approve the [c]ontract and [a]mendments in order for the contract to be enforceable." However, "Truscheit responded . . . that he did not believe it needed board approval because he said [Torkelson] had the authority and he did not want to go to the Board." Hernandez's affidavit was a business records affidavit. *See* TEX. R. EVID. 803(6). Hernandez stated she was a custodian of records for IDEA and provided fifty-three pages of public records consisting of IDEA's budget proposals and budget items voted on and adopted by the Board from fiscal years 2008–2009 through 2019–2020. Hernandez noted that none of the budgets referenced or had line items for CFO employment or compensation.

5

In Truscheit's response to IDEA's amended plea to the jurisdiction, he argued that the applicable administrative rule does not require express approval of a contract by a charter school's governing body. Truscheit further contended that the rule "did not list hiring and firing of the CFO" like it did for CEO, so "[a]ny reasonable construction of the [rule] must necessarily conclude that it does not apply to general personnel matters including the hiring, firing, and paying of officers like the CFO." Rather, Truscheit notes that the rule "confers exclusive authority to select and terminate employees to the CEO of a charter school." Finally, Truscheit suggests that the "Board approved budgets and budget amendments each year that included the allocation of funds for salaries of educators, support staff, administrators[,] and officers" and that in doing so it "approved the expenditure of state funds for the Truscheit [c]ontract. With such approval, the [c]ontract was '*properly executed*' and the statutory waiver of immunity to suit applies." Truscheit included an affidavit by Torkelson, wherein Torkelson stated that he "had exclusive authority to hire and terminate officers such as the [CFO]." Torkelson further averred that "it was not the practice of the Board to approve employment contracts such as the Truscheit contract" and that "it would have been completely impractical[] for the Board to have a duly noticed meeting to consider the expenditure of every dollar of state funds."

On January 20, 2022, the trial court heard arguments regarding the plea to the jurisdiction from each party. The trial court took the parties' arguments under advisement and asked them to file additional documents and case law. On February 25, 2022, the trial court denied IDEA's plea without stating its reason. This interlocutory appeal

6

followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.  STANDARD OF REVIEW

"Local governmental entities 'enjoy governmental immunity from suit, unless immunity is expressly waived.'" *Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014) (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010)). "Governmental immunity includes both immunity from liability, 'which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether.'" *Id.* (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006)). If a local governmental entity enjoys governmental immunity, the trial court does not have subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Open-enrollment charter schools act as an arm of the State government and are thus entitled to governmental immunity in the same respect as public schools. TEX. EDUC. CODE ANN. § 12.1056; *see El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 529–30 (Tex. 2020).

A plea to the jurisdiction is a dilatory plea used "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Miranda*, 133 S.W.3d at 226. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* We will liberally construe the pleadings and look to the pleader's intent. *Id.* When the

7

determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* The plaintiff carries the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

"However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 227. If the evidence creates a fact question, the plea to the jurisdiction should not be granted, and the fact issue should be resolved by the trier of fact. *Id.* at 228. If, on the other hand, the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* This standard generally mirrors that of summary judgment. *Id.*; *see generally* TEX. R. CIV. P. 166a(c).

Accordingly, when challenging the jurisdictional facts, the governmental unit carries the initial burden. *Miranda*, 133 S.W.3d at 228. "[A]fter the [governmental unit] asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* "When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant." *Id.* "We indulge every reasonable inference and resolve any doubts in the

8

nonmovant's favor." *Id.*

### III.     APPLICABLE LAW

**A.     Immunity from Breach of Contract Claim**

It is up to the legislature to waive immunity for local governmental entities, and it must do so by "clear and unambiguous language." *Church & Akin, L.L.C.*, 442 S.W.3d at 301 (citing TEX. GOV'T CODE § 311.034). The legislature has created one such waiver for certain contract claims:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. "'Contract subject to this subchapter' means . . . a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2)(A). To determine whether a contract with an open-enrollment charter school is properly executed, we look to "the authority the legislature granted the school in its charter, including the statutory and regulatory requirements placed on open-enrollment charter schools entering (or seeking to enter) contractual relationships." *El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 532.

**B.     Charter School Authority**

The Texas Administrative Code sets out the delegation of powers and duties for the governing body of a charter school. *See* 19 TEX. ADMIN. CODE ANN. § 100.1101 (2022) (Tex. Educ. Agency, Delegation of Powers and Duties). The code provides that

9

[e]xcept as provided by this section,[7] the governing body's powers and duties to operate the charter school shall not be delegated, transferred, assigned, encumbered, pledged, subcontracted, or in any way alienated by the governing body of the charter holder. Any attempt to do so shall be null and void and of no force or effect and shall constitute abandonment of the contract for charter.

*Id.* § 100.1101(b)(2). Further,

[a]n open-enrollment charter must specify the powers or duties of the governing body of the charter holder that the governing body may delegate to an officer, employee, contractor, management company, creditor, or any other person. The exclusive method for making such a delegation shall be to file a request for a delegation amendment with the [Texas Education Agency (TEA)] division responsible for charter schools under § 100.1033 of this title (relating to Charter Amendment), specifying the power or duty delegated and the particular person or entity to which it is delegated.

*Id.* § 100.1101(c). "Unless the Commissioner has accepted a written delegation as a charter amendment, a contract that 'authorize[s] the expenditure or obligation of state funds' is one of the 'powers and duties' that the 'governing body of the charter holder itself' must exercise." *El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 532–33 (quoting 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii)).

However, certain "powers and duties must be exercised by the superintendent or, as applicable, the administrator serving as the educational leader and [CEO] of the charter school." *Id.* § 100.1033(b)(14)(D). Like governing body powers and duties, "[a]n amendment that is not authorized by such a specific written exception is not effective for any purpose." *Id.* Among those powers and duties is the power and duty "to select and terminate charter school employees or officers." *Id.* § 100.1033(b)(14)(D)(iii).

---

7 The exceptions to the prohibition against delegation require an amendment to the school's charter be approved by the commissioner of the Texas Education Agency (TEA), which the parties agree has not occurred here. *See* 19 TEX. ADMIN. CODE ANN. § 100.1101(b)(14) (2022) (Tex. Educ. Agency, Delegation of Powers and Duties).

10

## IV.    ANALYSIS

The parties agree to many issues underlying this case. First, both agree that IDEA is generally entitled to governmental immunity as an open-enrollment charter school that expends public funds. See TEX. EDUC. CODE ANN. § 12.1056; *El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 529–30. Both parties agree that for IDEA's immunity to be waived, the contract must have been "properly executed." *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(2), 271.152. Both parties agree that Torkelson had the authority to select and terminate IDEA employees and officers. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(D)(iii). Neither party disputes that the Board did not *expressly* approve the contract. Rather, Truscheit contends that immunity is waived because: (1) Torkelson had the authority to execute the contract vis-a-vis Title 19 of the Texas Administrative Code § 100.1033(b)(14)(D) and IDEA's budget which included compensation for a CFO, *see id.*; or (2) in the alternative, Title 19 of the Texas Administrative Code § 100.1033(b)(14)(C) does not require the board to *expressly* approve the spending of public funds, and thus, IDEA's approval of budgets and budget amendments amounted to approval or adoption of the contract. *See id.* § 100.1033(b)(14)(C). Truscheit also argues that various fact issues preclude the granting of a plea to the jurisdiction.

IDEA, conversely, argues that (1) Torkelson's contract specifically prohibited him from entering into contracts on behalf of IDEA and the authority was not otherwise delegated to him, s*ee id.*; (2) IDEA's budgets were only for one-fiscal-year periods, which precludes Torkelson from binding IDEA to multi-year contracts without express approval; and (3) the prohibition against delegating the authority to expend or obligate public funds

11

in 19 Texas Administrative Code § 100.1033(b)(14)(C)(ii) requires express approval from the Board. *See id.*; *see also El Paso Educ. Initiative*, 602 S.W.3d at 532–33. As it pertains to Truscheit's claim that factual disputes preclude granting the plea to the jurisdiction, IDEA argued that "[t]hese [disputes] were all either legally irrelevant or factually resolved by the undisputed evidence," and that "merely asking rhetorical questions does not constitute evidence and cannot, therefore, meet Truscheit's burden to raise a material issue of disputed fact." We address each of the parties' arguments in turn.

## A. Torkelson's Authority

The parties agree that Torkelson had the authority to select and terminate employees and officers, including the CFO. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(D)(iii). The dispute arises, however, as to whether that authority extended to binding IDEA to an employment contract expending public funds beyond selecting the employee or officer. IDEA points to a clause in Torkelson's contract that permitted him to "negotiat[e] and execut[e] contracts where authorized by the Board," arguing that without express authorization, Torkelson had no authority to bind IDEA to a multi-year employment contract. IDEA further argues that the Texas Supreme Court's opinion in *El Paso Education Initiative* is directly on point and controlling. *See* 602 S.W.3d at 532–33.

Truscheit, on the other hand, argues that Torkelson's authority to select and terminate employees and officers necessarily includes the authority to bind IDEA to employment contracts that expend public funds. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(D)(iii). Truscheit contends that factual differences in *El Paso Education*

12

*Initiative* make it distinguishable and inapposite. *See* 602 S.W.3d at 524–26.

In *El Paso Education Initiative*, the Texas Supreme Court considered whether a lease agreement executed by the school's superintendent and president effected a waiver of governmental immunity. *See id.* There, the board authorized the superintendent and president, Burnham, "permission to 'continue to negotiate a lease.'" *Id.* at 524–25. Further, the contract specifically stated that "each signatory 'represents and warrants' that she has the authority to execute the lease and that it is 'binding upon the entity' she represents." *Id.* at 525. However, "[d]espite these representations, [the lessor] understood that the district's board had to approve the lease to finalize it." *Id.* Ultimately, the board did not approve the lease and the lessor sued for anticipatory breach. *Id.* at 525–26. The supreme court held that the district, as an open-enrollment charter school expending public funds, acted as an arm of the State government, and was thus entitled to governmental immunity. *Id.* at 530. The court then needed to determine whether the district's immunity was waived under the local government code. *Id.* at 531–33.

To determine whether the district's immunity was waived, the court considered whether the contract was "properly executed" on behalf of the district. *Id.* at 531–32. In doing so, the court looked to whether the lessor "demonstrate[d] that the contract's execution comport[ed] with the authority the legislature granted the school in its charter, including the statutory and regulatory requirements placed on open-enrollment charter schools entering (or seeking to enter) contractual relationships." *Id.* at 532. Ultimately, the court concluded that without proper delegation as a charter amendment, executing "a contract that 'authorize[s] the expenditure or obligation of state funds' is one of the

13

'powers and duties' that the 'governing body of the charter holder itself' must exercise." *Id.* at 532–33. Because the evidence showed that the board was never presented the contract for approval, the lease was not "'properly executed on behalf of' the district." *Id.* at 533.

Truscheit argues that *El Paso Education Initiative* is inapposite because it involves a contract for real estate, not employment, and because the lease amount "did not arise in the ordinary course of business for the school and was probably not a budgeted item." Truscheit asserts that:

> the hiring of a CFO . . . would arise in the ordinary course of business and . . . funds had been allocated in a yearly budget. Moreover, the TAC rules are silent as to property leases whereas in the case at bar there is a specific rule giving the CEO exclusive authority to select or terminate employees.

However, a review of the applicable rule does not lend credence to Truscheit's argument. The rule specifically states that the governing body—in this case, the Board—must approve expenditures of state funds. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii). While the rule does give the CEO the authority to "select and terminate charter school employees or officers," it does not provide him the authority to approve the expenditure of funds to do so. *See id.* § 100.1033(b)(14)(D)(iii).

"When we construe administrative rules and statutes, our primary objective is to give effect to the intent of the issuing agency and legislature, 'which, when possible, we discern from the plain meaning of the words chosen.'" *Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Env't Quality*, 393 S.W.3d 417, 424–25 (Tex. App.—Austin 2012, pet. denied) (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). We see no reason the TEA would expressly limit the authorization to expend

public funds to the Board in one subsection while implicitly authorizing the CEO to do so in another. *See id.*; *see also Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (explaining that when interpreting statutes "[w]e should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone"). Rather, the CEO's authority to select and terminate employees and officers must be within the authorized expenditure of public funds set by the Board. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii).

Truscheit also argues that the rule's reference to "'final authority' necessarily recognizes and implies that there are other persons in the charter school that also have authority to approve the expenditure of state funds." *See id.* However, even assuming the rule contemplated other levels of authority within the school, without the Board's final approval as the rule requires, there is no authority to expend funds. *See id.*; *Heritage on San Gabriel Homeowners Ass'n*, 393 S.W.3d at 424–25. The plain meaning of the rule requires the Board, not another person, to authorize the expenditure or obligation of state funds. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii); *Heritage on San Gabriel Homeowners Ass'n*, 393 S.W.3d at 424–25. Moreover, without an amendment of the school charter, requiring approval from the TEA commissioner, this duty cannot be delegated. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii).

We must next consider whether the Board's budget, which allowed for the hiring and compensation of a CFO, created authority for Torkelson to bind IDEA to the contract as Truscheit argues. Among the exhibits provided by IDEA are its annual budgets as adopted by the board from fiscal years 2008–2009 through 2019–2020. The budgets

15

included a line item for "School Leadership," which the parties agree includes the CFO's salary and benefits. However, the budgets adopted by IDEA necessarily only include expenditures for the fiscal year contemplated. Truscheit's contract, and each amendment thereto, was for multi-year terms. Thus, IDEA's approval of the budget for any given fiscal year could not have created authority for Torkelson to obligate IDEA to expend public funds for future fiscal years. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii); *El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 532–33.

Truscheit contends that "[t]he argument that a contract has not been approved by the Board merely because it creates a multi-year obligation is not tenable in the least bit." In support of this argument, Truscheit notes that "there is no question that the Board routinely approves multi-year contracts and obligations in its yearly budget," such as Torkelson's multi-year CEO contract or rent and mortgage payments. However, those contracts are not before us. Further, as Truscheit specifically notes, those contracts *were* approved by the Board—Truscheit's was not. Thus, the notion that IDEA's annual budget including items from approved multi-year contracts must necessarily provide Torkelson the authority to obligate the expenditure of state funds for multiple years without Board approval is unsustainable.

Additionally, Torkelson's contract expressly limited his ability to enter into contracts on behalf of IDEA "where authorized by the Board." Thus, neither the rule nor Torkelson's contract permitted him to obligate IDEA to expend state funds. *See id.* As such, the contract was not "properly executed on behalf of" IDEA as contemplated by Torkelson's authority. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A).

16

**B.     Approval by Adoption**

Truscheit next argues that the Board implicitly approved the contract by continuing to pass the annual budget providing for "School Leadership." Truscheit notes that the rule prohibiting the Board from delegating the approval or obligation of the expenditure of state funds "does not specify how or when the [B]oard must approve the expenditure of state funds." *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii). We agree with Truscheit that it is impractical for "each and every expenditure of state funds [to] be listed as an agenda item, duly noticed and approved by the [Board]." We further agree that the Board may approve the expenditure or obligation of state funds through its approved budget. However, this argument fails for the same reason as the argument that Torkelson was granted authority to enter into the contract by the Board's approval of a budget: the Board's approval of the expenditure for state funds did not exceed the fiscal year for which the budget was passed.[8]  *See id.*

Extending Truscheit's argument, the CEO would be able to enter into any multi-year contract to expend state funds without providing notice to or receiving approval from the Board, merely because the Board included the expenditure of state funds for a specific year. For example, if the Board's budget allowed for the purchase of a school bus in fiscal year 2010–2011, the CEO could bind IDEA to a contract to purchase a school bus each

---

[8] To the extent Truscheit intends to argue that the Board ratified the contract through subsequent budget approvals, the evidence presented by IDEA is that the Board was never notified of or presented with the contract, and Truscheit presented no evidence otherwise. Thus, the Board could not have ratified the contract. *See Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 146 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied) ("[I]f a party by its conduct recognizes a contract as valid, *having knowledge of all relevant facts*, it ratifies the contract." (emphasis added)); *see also McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019) ("Both express and implied contracts require the element of mutual agreement . . . .").

17

of the following three fiscal years without Board notice or approval. That application is incongruent with the rule. *See id.* It does not matter that the expenditure of state funds is for compensation of an officer, which Torkelson had the authority to select, because the rule prohibits the Board from delegating the authority to expend or obligate state funds—there is no exception for the purpose of the expenditure or obligation. *See id.* Such construction of the rule is consistent with the Texas Supreme Court's holding that "a contract that 'authorize[s] the expenditure or obligation of state funds' is one of the 'powers and duties'" that the "'governing body of the charter holder itself' must exercise." *See El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 532–33 (alteration in original).

## C.    Disputed Material Facts

Finally, IDEA argues that the trial court could not have denied its plea to the jurisdiction on the basis that there are genuine issues of material facts. *See Miranda*, 133 S.W.3d at 228; *see also* TEX. R. CIV. P. 166a(c). The evidence provided by IDEA conclusively shows that the authority to authorize the expenditure and obligation of state funds had not been delegated to Torkelson. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii). The evidence further shows that the Board did not approve the contract through its annual budgets or during any duly noticed meeting. *See id.* As we have concluded, the Board could not have implicitly approved the contract, and Torkelson could not bind IDEA to a multi-year contract where no authority was given. *See id.* Truscheit did not present any evidence that disputed or contradicted the evidence presented by IDEA.

Truscheit insists that there are genuine issues of material fact. However, in his

response, Truscheit does not cite to the record where the disputes can be found and, in our review, we do not find any disputes. *See* TEX. R. APP. P. 38.1(i) (requiring a brief to include "appropriate citations to authorities and to the record"); *id.* R. 38.2(a)(1) (requiring an appellee's brief to conform to the requirements of Rule 38.1). The facts Truscheit contends are in dispute are either (1) issues of law (such as "Did Torkelson have authority to sign the [c]ontract?"); (2) not in dispute (such as "Did the Board approve a budget that authorized the hiring of a CFO?"); or (3) not material to the disposition (such as "What Board procedures were in place at the time the [c]ontract was signed for the approval of employment contracts?"). *See Miranda*, 133 S.W.3d at 228; *see also* TEX. R. APP. P. 166a(c); *Janaki v. C.H. Wilkinson Physician Network*, 624 S.W.3d 623, 628 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.) ("A fact is 'material' only if it affects the outcome of the suit under the governing law." (quoting *W. Trinity Props., Ltd. v. Manhattan Mortg. Corp.*, 92 S.W.3d 866, 869 (Tex. App.—Texarkana 2002, no pet.))). Accordingly, we conclude there are no issues of material fact. *See Miranda*, 133 S.W.3d at 228; *see also* TEX. R. CIV. P. 166a(c).

**D.    Summary**

We conclude that Torkelson did not have the authority to obligate the expenditure of state funds on behalf of IDEA. *See* 19 TEX. ADMIN. CODE ANN. § 100.1033(b)(14)(C)(ii). IDEA's passing of an annual budget that allowed for the salary of a CFO did not authorize the expenditure of state funds beyond that fiscal year. *See id.* And no issue of material fact exists that would preclude the trial court from granting IDEA's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228; *see also* TEX. R. CIV. P. 166a(c). We further conclude

the contract was not "properly executed on behalf of" IDEA. S*ee* TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A); *El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 532–33. Because the contract was not properly executed on behalf of IDEA, its immunity was not waived. *See* TEX. LOC. GOV'T CODE ANN. § 271.152; *El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 534. The trial court erred by denying IDEA's plea to the jurisdiction. We sustain IDEA's first and second issues.

## V. CONCLUSION

We reverse the trial court's judgment and render judgment dismissing the suit.

CLARISSA SILVA
Justice

Delivered and filed on the
1st day of September, 2022.

20