

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00241-CV

_____

IN THE INTEREST OF A.H. AND V.H., CHILDREN

---

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 22-3497-481

---

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

This is an appeal from an order granting a family-violence protective order, which was sought by Appellee (Father) to protect himself and his two children from their mother Appellant (Mother). *See* Tex. Fam. Code Ann. §§ 81.001, 85.001. In two issues, Mother argues that the evidence is legally and factually insufficient to support the trial court's findings that (1) she had committed family violence in the past and (2) there is a likelihood that she will commit family violence in the future. Based on the standards of review that we are required to apply, we hold that legally and factually sufficient evidence supports the trial court's findings. Accordingly, we affirm.

## II. Background

In May 2022, Father filed an application for a family-violence protective order against Mother to protect himself and the parties' two children. Father alleged that Mother had engaged in family violence. Father asked the trial court to issue a temporary ex parte protective order pending a final hearing and to issue a final protective order after the final hearing.

To his application, Father attached his affidavit in which he recounted Mother's actions toward him:

- Father averred that in early March 2022, Mother and her significant other (whom he recognized by their voices and movements despite their being clothed in face masks and hoodies) had attacked him. He was hit in the

2

head with a baseball bat and a chain, "nearly knocking [him] unconscious." During the encounter, Mother had stated, "I told you I was going to f[--]k you up." Father averred that he was in fear for his life and for the life of his children.

- Father also averred that in December 2020, Mother's significant other had attended a visit with Mother and had pulled a gun and had threatened him. Father learned that his son had seen the gun and was frightened.

- Father further averred that Mother had called his phone from an anonymous number numerous times, at all hours of the day and night, "sometimes making threats, [and] other times just remaining silent and hanging up after calling repeatedly."

The trial court granted Father's request for an ex parte protective order and subsequently held a final hearing. Following the hearing, the trial court found that family violence had occurred, that it is likely to occur in the future, that Mother had committed an act constituting a felony offense involving family violence against Father, and that such act had caused serious bodily injury to Father. The trial court granted Father's application for protective order for a period of five years. The trial court determined that there would be only supervised visitation by law enforcement going forward and that Mother would be required to pay the cost of having law enforcement supervise the visits. Mother then perfected this appeal.

### III. Sufficient Evidence Supports the Family-Violence Findings

In her two issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings that she had committed family violence in the past and that there is a likelihood that she will commit family violence in the future. Applying the applicable standards of review, we conclude that legally and factually sufficient evidence supports the trial court's family-violence findings.

#### A. Standards of Review

When the trial court acts as factfinder, we review its findings under the legal- and factual-sufficiency standards. *Huskins v. Garcia*, No. 02-21-00328-CV, 2022 WL 3905083, at *2 (Tex. App.—Fort Worth Aug. 31, 2022, no pet.) (mem. op.) (first citing *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); then citing *Watts v. Adviento*, No. 02-17-00424-CV, 2019 WL 1388534, at *3 n.3 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (per curiam) (mem. op.) (stating that legal- and factual-sufficiency standards of review are proper in appeals from protective orders); and then citing *Jakobe v. Jakobe*, No. 2-04-068-CV, 2005 WL 503124, at *1 n.4 (Tex. App.—Fort Worth Mar. 3, 2005, no pet.) (per curiam) (mem. op.) (measuring the sufficiency of the evidence in protective order appeals by legal- and factual-sufficiency contentions)).

##### 1. Legal Sufficiency

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to

prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658. On the other hand, no more than a scintilla exists when the evidence offered to prove a vital fact is so weak that it creates no more than a mere surmise or suspicion of its existence. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 397 (Tex. 2019); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

### 2. Factual Sufficiency

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all

5

the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

### B.    Applicable Law

The Family Code provides that a trial court must render a protective order if it finds that family violence has occurred and is likely to occur in the future. Tex. Fam. Code Ann. §§ 81.001, 85.001, .022. "Family violence" means an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault but does not include defensive measures to protect oneself. *Id.* § 71.004(1). "Member of a household" includes a person who previously lived in a household. *Id.* § 71.006.

## C. Relevant Evidence

Father testified at the protective-order hearing that Mother has only supervised visitation with their two children. Father described his strained relationship with Mother, as well as several incidents that had occurred.

Father testified that since 2015, he had received either a threatening email or a threatening voicemail from Mother "a thousand times."[1] He said that he had received numerous threats from Mother since 2015 and that one of the reasons that Mother was allowed only supervised visits was because she had threatened to harm Father or the children; she had said, "I'm going to hurt you. And, as I told you, I'm going to take these kids to the Philippines."[2]

In the April to June 2020 time frame, Mother's significant other James Dean[3] showed up "high, drunk" to a visit, and Father told Mother, "[T]his can't happen. If this guy is coming like this, either you got to tell him to leave, or I will terminate the visit peacefully." Father told Mother that if she wanted to bring Dean to future visits, she needed to get his consent for Father to run a background search on him. Mother

---

[1]Father testified that he had tried to report Mother for harassment, but that was unsuccessful.

[2]Father testified that Mother had previously kidnapped the children. In 2012, Mother took the children to South Carolina. Father testified that he had hired a private investigator to locate Mother, and when he had found her, Mother demanded that she be paid $5,000 before she would return the children. Father paid Mother the money and recovered his children.

[3]Out of an abundance of caution, we use a pseudonym for Mother's significant other.

sent Father an email stating, "'F' you. I'm not going to do it. I do what I want to do. I hope you die."

At the December 2020 scheduled visit that took place at a park in Carrollton, Mother and Dean arrived two hours late. When Dean approached the children, Father reminded Mother that Dean was not allowed to be present at the visit because he had not undergone a background check. Mother said, "'F' you. I'll bring anybody I want." Dean said, "Oh, MF, you can't say that. You can't do that." Father announced that the visit was terminated and grabbed his children's hands to leave; Dean pulled a gun, which the children saw. Mother got mad at Dean and told him something, and he ran to his truck, to the river, to the ladies' room, to the men's room, to a building, and back to his truck. While Dean was running around, Father went to his truck but saw that he was blocked in. He called the police. The police came but did not find a gun. After that incident, Father's daughter said that she did not want to go to that park anymore and that she was scared "for eight months to go . . . there."

Father testified that on March 1, 2022,[4] he ran errands after work. Prior to picking up his children, his truck made a strange noise, so he pulled over. As soon as he got out of his truck, someone hit him with a baseball bat. He saw that there were

[4]Initially, Father testified that the event had occurred in early March around March 1 through March 3. On cross-examination, he explained that the event had happened anytime from March 1 to March 8. On redirect, he refreshed his recollection by looking at his notes and testified that the event had occurred on March 1.

two people wearing face masks, sunglasses, and hoodies, despite that it was a warm day. One of the individuals was a woman and the other was a man. The man had a chain that he was using to hit Father, causing Father to fall. Father explained that as the woman hit him with the baseball bat, she "used a word that [Mother and Dean] use all the time towards [him]." Although Father did not see their faces, he recognized the attackers as Mother and Dean based on their voices, wording, and body language. Father screamed, "I know who you are," and went toward his attackers. Mother tried to hit him again with the baseball bat, but Father grabbed her hand with one of his hands and used his other hand to try to dial 911. As he was trying to dial, he was hit in the back with "a rock or [a] heavy punch" and let go of Mother's wrist. Mother and Dean ran toward Father's truck and looked in, but Father said, "My babies are not here." Mother and Dean then ran and left the scene. Father fell down three or four times before he was able to get into his truck. He stopped at a shopping center to clean up the blood on himself. Father reported this incident to the police and went to the doctor and the eye doctor. Father admitted into evidence photographs of his injured face and head that were taken a couple of days after the incident.

Shortly after the ex parte temporary protective order was served on Mother, she called Father twice, but he did not answer. He then received a call from a private number; a lady whose voice was unknown to Father said, "We're going to fight this out." He hung up without replying. These communications were made despite that

the temporary ex parte protective order stated that there was to be no communication.

Father testified that he had been physically attacked by Mother and that he feared that he would be attacked by her in the future. In addition to fearing for his future safety, he also feared for his children's safety because there was also a threat of kidnapping or violence against his children by Mother.

During her cross-examination of Father, Mother (who represented herself pro se in the trial court) made much of the fact that Father did not introduce his medical records or police reports from the gun incident at the park or the assault. During her case in chief, she called Dean to testify. With regard to the December 2020 incident at the park, Dean said that as soon as Father called 911 and said that Dean had a gun, Dean started recording the incident, which he said Mother was also recording.[5] Dean said that "the cops showed up. They searched for the gun. No gun. No gun anywhere [in the] park, no gun on [him], no gun in [his] truck." As to the March 1, 2022 incident, Dean said that he and Mother had come to Texas that day for a consultation with their family-law advocate and had driven back to Oklahoma City the same day; he testified that he and Mother were at their residence in Oklahoma from March 2 through March 7. The trial court asked Dean if Father knew that they "were coming into town to see the family[-law] advocate," and Dean said, "Not that I know of."

---

[5]No such recordings were admitted in evidence.

**D. Analysis**

Mother argues that the evidence is insufficient to support a finding of past family violence because Father could not visually identify his attackers during the March 2022 incident, because the attack happened between March 1 and March 8 at a time when Mother and Dean were in Oklahoma, and because no gun was found during the December 2020 visit at the park.[6] The record reflects that on redirect, Father narrowed the date of the assault from "early March" to March 1, and Dean testified that he and Mother were in the area that day to meet with a family-law advocate. Even if the trial court did not believe Father's testimony about the incident with Dean and the gun at the park in December 2020, the testimony from Father and Dean regarding the March 1, 2022 incident is legally and factually sufficient to support a finding of past family violence. *See Watts*, 2019 WL 1388534, at *6; *Finley v. Finley*, No. 02-11-00045-CV, 2015 WL 294012, at *4 (Tex. App.—Fort Worth Jan. 22, 2015, no pet.) (per curiam) (mem. op.) (holding evidence legally sufficient to support the trial court's granting of application for protective order because uncontroverted testimony showed that father had broken into home where mother and son were

---

[6]Mother also argues that Father's claimed harassment from her via voicemail messages was insufficient because the two voicemail messages that he played for the trial court did not show a threat of harm and were only "requesting to speak with and to have pictures of her children and expressing her exasperation with Father." We agree that the two voicemail messages did not reflect threats and therefore do not focus on them in our analysis of past family violence.

staying and tried to take son and then punched mother in the face). We overrule

Mother's first issue.[7]

As for the trial court's finding that Mother was likely to commit family violence

in the future, evidence of past family violence can constitute sufficient evidence that

future family violence is likely. *See Watts*, 2019 WL 1388534, at *6; *Maki v. Anderson*,

No. 02-12-00513-CV, 2013 WL 4121229, at *5 (Tex. App.—Fort Worth Aug. 15,

2013, pet. denied) (per curiam) (mem. op.); *see also In re Epperson*, 213 S.W.3d 541, 544

(Tex. App.—Texarkana 2007, no pet.) ("Oftentimes, past is prologue; therefore, past

violent conduct can be competent evidence which is legally and factually sufficient to

sustain the award of a protective order."). Given Father's testimony and the

photographs of the injuries to his face and head, the trial court could have inferred

that Mother would continue to act the same way in the future. Further, the trial court

could have believed Father's testimony that he was concerned for the future safety of

his children because Mother had threatened to take them out of the country.

Mother argues that she "lives three hours away in a different state than [Father]

and works two jobs, which would most likely hinder her availability to commit acts of

---

[7]Towards the end of the discussion of her first issue, Mother's brief states that "a finding of past family violence should actually be assigned to [Father]." As we have stated in a prior opinion, "Our task is not to determine whether some evidence in the record supports a finding contrary to the one the trial court made, as [appellant's] argument would require us to do." *Watts*, 2019 WL 1388534, at *6. Moreover, a court of appeals cannot make original findings of fact; it can only "unfind" facts. *Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986). Accordingly, we decline Mother's implicit request to make a finding of past family violence as to Father.

future family violence." Despite that distance and Mother's two jobs, the record demonstrates that Mother was able to come to Texas on March 1, 2022, and commit an assault causing serious bodily injury to Father.

Mother also cites to two cases from this court in arguing that "where no threats of future violence were made, the court found that future family violence was unlikely to occur despite there being a child in the situation." *See Huskins*, 2022 WL 3905083, at *3; *Scott v. Wooley*, No. 02-19-00318-CV, 2020 WL 7063292, at *4–5 (Tex. App.— Fort Worth Dec. 3, 2020, no pet.) (mem. op.). Both of the cases cited by Mother are appeals from orders *denying* applications for protective orders. *See Huskins*, 2022 WL 3905083, at *1; *Scott*, 2020 WL 7063292, at *1. And in both cases, we stated that we were deferring to the trial court's credibility determinations. *See Huskins*, 2022 WL 3905083, at *4; *Scott*, 2020 WL 7063292, at *5. We also defer to the trial court's credibility determinations here, and the record is clear that the trial court believed Father's testimony was credible.

Applying the applicable standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's finding that Mother is likely to commit family violence in the future. *See Watts*, 2019 WL 1388534, at *6; *Finley*, 2015 WL 294012, at *4 (holding evidence factually sufficient to support protective order based on prior assault).

Because the evidence is legally and factually sufficient to support both the trial court's finding that Mother had committed an act of family violence against Father in

13

the past and its finding that Mother is likely to do so again in the future, we hold that the trial court's protective order is supported by legally and factually sufficient evidence. *See Watts*, 2019 WL 1388534, at *6. Accordingly, we overrule Mother's two issues.

## IV. Conclusion

Having overruled Mother's two issues, we affirm the trial court's protective order.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: April 6, 2023